Richard S. SEXTON, Petitioner,

v.

Hon. Stephen L. BATES, Judge, Grant Circuit Court, Respondent,

and

Gary W. Skinner, Real Party in Interest.

No. 2001–CA–000081–OA.

Court of Appeals of Kentucky.

March 23, 2001.

John W. Walters, Lexington, KY, for Petitioner Sexton.

Larry Hicks, Florence, KY, for Real Party in Interest Skinner.

Before BARBER, BUCKINGHAM, and COMBS, Judges.

### OPINION AND ORDER

BARBER, Judge.

Petitioner, Richard S. Sexton (Sexton) has filed a petition for writ of prohibition. The real party in interest, Gary W. Skinner (Skinner) has filed a motion for additional time in which to respond to the petition. It is ORDERED that the motion be GRANTED. The tendered response is ORDERED Filed. The petition is hereby GRANTED.

Sexton asks this Court to prohibit the respondent trial court from requiring him to use a physician of the court's choosing to perform an independent medical examination (IME) of Skinner pursuant to Kentucky Rule Of Civil Procedure (CR) 35.01. Sexton contends that, in so ordering, the respondent has either acted without juris-

diction or has acted in error, and there is no adequate remedy by appeal.

Sexton is the defendant to an automobile negligence action filed by Skinner. Following Skinner's deposition and a review of his medical records, Sexton noticed Skinner to present himself for an IME at a certain date, to be performed by Dr. Daniel D. Primm, Jr., an orthopedist from Lexington, Kentucky. Skinner filed a motion for a protective order, arguing that Sexton had failed to show good cause for an IME. Skinner also argued that Primm is a well-known "defense doctor", thus has "large economic incentive to ensure that his opinions are conservative", and that the examination was an attempt by Sexton "to manufacture favorable testimony".

Sexton responded that good cause was demonstrated by the pleadings where Skinner has placed his physical condition in controversy and is seeking damages. Further, he noted that Skinner is not challenging Primm's credentials or competency, only his being a "defense doctor", a matter he could raise at trial on cross-examination.

The trial court entered an order on October 10, 2000, directing that the IME be conducted. Without making specific findings, the court stated that it had found good cause for the IME and ordered that Skinner be examined by "any practicing physician at the Lexington Orthopedic Associates, PSC, . . . ." The trial court noted that it had chosen those physicians on its own accord and over Sexton's objection. The order further provided that the IME would be at Sexton's expense.

Sexton moved for reconsideration, citing a number of federal decisions that stand for the principle that a plaintiff is required to have a valid objection to overcome a defendant's choice of a physician to perform an IME. However, the trial court reached the same conclusion on reconsideration. The court supported its ruling by citing to 6 Bertelsmann & Philipps, *Kentucky Practice, Rules of Civil Procedure Annotated,* 4th Edition, and the authors' comment to CR 35.01 [itself referring to 8A Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, *Federal Practice and Procedure:* Civil §§ 2234 and 2239 (1994) ] to wit:

> [A] moving party has no absolute right to the choice of a physician. . . . Although the practice generally followed is not to object to the physician selected by the moving party, the Rule does not so require.[1]

In this original action, Sexton again relies on the same federal cases on which he relied below and renews the argument that a valid objection, not merely a general allegation of bias or prejudice, must be made in order to deprive a defendant of his choice of a doctor to perform an IME. Further, Sexton claims the respondent's decision violates his right to due process in that the court is choosing who will examine plaintiff for the defense, while plaintiff has no similar restrictions. In addition, he will have to pay for an expert he did not select.

Sexton further contends that being required to use a physician chosen by the Court would cause irreparable damage to his ability to fully defend himself for which an appeal would not be an adequate remedy and, in fact, would cause irreparable damage to the adversary system itself. In particular, he argues that the expert, if called at trial, would be identified to the

---

1. In the Fifth Edition of the same treatise, the latter portion of the comment now reads: "Although the practice is not to object to the physician selected by the moving party, the Rule contemplates this right to object to a bias [sic] or partial expert." 6 Kurt A. Phillips, Jr., *Kentucky Practice, Rules of Civil Procedure* 654 (1995).

jury as the defendant's doctor and that any negative testimony given by the expert could be construed by the jury as that of the defendant's own doctor testifying against the defendant. Last, but not least for Sexton, he claims that, because few qualified physicians are willing to perform IME's, if a plaintiff is able to object to a particular doctor only because the doctor often performs those examinations, he and all defendants to personal injury actions will find themselves "in an impossible position."

In his response, Skinner now asserts that he has no objection to an IME. However, he continues to maintain that, by his choice of an economically motivated physician, Sexton wants the examination for the sole purpose of manufacturing favorable testimony. He too relies on federal authorities which provide that a trial court may reject a defendant's choice of a physician "upon sufficient showing of bias or prejudice."

■ This Court, having considered the parties' arguments and the appended record, has determined that this original action is well taken. A writ of prohibition is an extraordinary and discretionary remedy. It is generally issued only when a lower court is proceeding, or is about to proceed, outside its jurisdiction and there is no adequate remedy by appeal, or when it is about to act incorrectly, although within its jurisdiction, and there exists no adequate remedy by appeal or otherwise and great injustice and irreparable injury would result to the petitioner if the court should do so. *See, e.g., Southeastern United Medigroup v. Hughes,* Ky., 952 S.W.2d 195, 199 (1997). Although we do not necessarily accept all of Sexton's contentions of irreparable harm, we believe that he has made a threshold showing sufficient to prompt this Court's exercise of its discretion.

In addition, the Kentucky Supreme Court has held that it is appropriate for this Court to exercise its supervisory authority in cases where "... the orderly administration of our Civil Rules necessitates an expression of our views ... as they pertain to ... the proper construction and application of the Rule in question...." *Bender v. Eaton,* Ky., 343 S.W.2d 799, 802 (1961). The absence of any Kentucky reported authority construing and applying an important component of CR 35.01 by itself would justify a review of the merits of the case *sub judice.*

■ It is a well established principle that a trial court has broad discretion over disputes involving the discovery process. However, this discretion is not unlimited, and we have determined that the respondent's outright rejection of Dr. Primm to perform the IME is an abuse of that discretion for lack of proper legal basis. In making this determination, we do not mean to advance that a party does not have the right to object to the opposing party's choice of an examining doctor. A review of sister state and federal law shows that any party to an action is clearly entitled to so object. We also do not mean to advance that the trial court does not have the authority to sustain the objection and to appoint an expert of its choice. We believe that such authority is an inherent part of the aforementioned discretion in discovery disputes. In addition, we are mindful that Kentucky Rule of Evidence (KRE) 706 specifically provides that "The court may appoint any expert witnesses agreed upon by the parties, and may appoint expert witnesses of its own selection." However, KRE 706 does include a procedure providing for the involvement of both sides in the appointment process. CR 35.01, although it stands out by its requirement of judicial intervention *ab ini-*

*tio,*[2] does not specifically address court appointment and the mechanics thereof. The Rule provides as follows:

> When the mental or physical condition (including the blood group) of a party, or of a person in the custody or under the legal control of a party, is in controversy, the court in which the action is pending may order the party to submit to a physical or mental examination by a physician, dentist or appropriate expert, or to produce for examination the person in his custody or legal control. The order may be made only on motion for good cause shown and upon notice to the person to be examined and to all parties and shall specify the time, place, manner, conditions, and scope of the examination and the person or persons by whom it is to be made.

The respondent trial court construed this Rule to not "... entitle a Defendant to select a physician to be used as their expert" and to not ... "require the Plaintiff to submit to examination by that physician" because the Rule does not expressly say so and the respondent was of the opinion that, had the Supreme Court intended for such entitlement, "it would have changed the rule to so read." While we agree with the trial court that a defendant does not have an absolute right to select a physician, we reject the position that a trial court must automatically exercise its appointment power at any time a plaintiff objects to a defendant's selection. The trial court did recognize that the authors

of *Kentucky Practice, supra,* commented that an objection to an opposing party's choice of a physician should be supported by "cogent reasons", yet the trial court did not follow through with its application of that comment.

■ CR 35.01 is similar to Federal Rule of Civil Procedure (FRCP) 35(a). The latter Rule has been construed in a long line of cases, including the very issue raised herein. The respondent declined to rely on the federal authorities submitted by Sexton stating "this Court is not bound by the application of Kentucky substantive law by the Federal Courts." However, when Kentucky reported law is silent on a particular question pertaining to the Rules, Kentucky courts routinely accept guidance from federal authorities that have spoken on the same question. *See, e.g., Scudamore v. Horton,* Ky., 426 S.W.2d 142 (1968); *Jackson v. Metcalf,* Ky., 404 S.W.2d 793 (1966). There is even one pronouncement from the Kentucky Supreme Court directly dealing with CR 35.01 and opining that "federal court decisions interpreting the latter rule may be accepted as persuasive authority." *Perry v. Com. Ex Rel. Kessinger,* Ky., 652 S.W.2d 655, 658 (1983). This Court has been unable to locate a reported Kentucky decision analyzing and resolving the specific query before us.[3]

■ Unlike the respondent trial court, we find the federal authorities cited by Sexton to be persuasive. In fact, we also

---

**2.** For analysis of the various elements of the federal equivalent to CR 35.01, see *Schlagenhauf v. Holder,* 379 U.S. 104, 85 S.Ct. 234, 13 L.Ed.2d 152 (1964).

**3.** The Court has reviewed *Keller & Brady Company v. Berry,* Ky., 121 S.W. 1009, (1909), where the appellate court stated, in reference to an examination of a plaintiff in a personal injury action requested at trial by the defendant: "Such examination should always be

made by some impartial physician appointed by the court." However, this case does not construe CR 35.01. In addition, because the defendant subsequently withdrew its request for a physical examination, and the decision includes no discussion and reports no findings regarding what showing of partiality was made to the trial court, we take this language as mere *dictum.*

find the federal authorities cited by Skinner to be persuasive in the same vein. The principle that clearly transpires from those authorities is that a defendant may choose the examining doctor and that such choice is entitled to respect but for a plaintiff's "valid objection". *See, Liechty v. Terrill Trucking Company,* 53 F.R.D. 590 (E.D.Tenn.1971); *Powell v. United States,* 149 F.R.D. 122 (E.D.Va.1993).

A party seeking a protective order bears the burden of persuasion. As previously stated, Skinner abandons his objection to the IME in his response to this original action, and retains his objection to the choice of Dr. Primm and his "significant economic interest and track record." Neither the motion for protective order, nor the response to this original action, advances any specific facts substantiating that alleged "track record". Further, although the motion asserted Skinner's "confidence" that, if a hearing were held, evidence of Dr. Primm's record would be adduced, that evidence, if any, is absent from the record before us. We also note that at no time did Skinner assert that Dr. Primm is incompetent or unqualified to perform the IME. It is clear to this Court that Skinner's stated objections fall far below the requirement that such objections be based on "valid" or "cogent" reasons,[4] and the trial court erred in failing to consider, or give any weight to, that requirement.

In conclusion, it is the holding of this Court that, while a trial court has the authority under CR 35.01 to appoint a physician to perform an IME, and even to appoint one other than selected by a defendant, it may do so only upon a valid and substantiated objection regarding the physician's qualifications or record, not upon a mere conclusory assertion discrediting the selection. We believe this is a sound principle because it safeguards the purpose embodied in CR 35.01 to provide "a level playing field between the parties. Defendants have no say in determining what physician plaintiff chooses as his or her expert witness." *Looney v. National R.R. Passenger Corp.,* 142 F.R.D. 264, 265 (D.Mass.1992). In the case of an allegation of bias, the soundness of the foregoing principle is further bolstered by the awareness that the objection goes to the credibility of the doctor and, thus, is a matter more appropriately raised through cross-examination at trial.

Therefore, the respondent trial court is hereby PROHIBITED from enforcing the portion of its order entered October 10, 2000, appointing a physician other than the one selected by Sexton.

BARBER and BUCKINGHAM, JJ., concur.

COMBS, J., dissents by separate opinion.

---

**4.** In fact, in *Douponce v. Drake,* 183 F.R.D. 565 (D.Colo.1998), a case on which Skinner relies in his response, the objection to the selection of a Dr. Larson as the examiner included that he had performed some 164 IME's over two and a half years, most of them on behalf of the defense and also that an attorney's affidavit stated that Dr. Larson had a bias against plaintiffs and was not "an honest man." Although more specific than Skinner's objections herein, these objections were deemed to be insufficient to prohibit Dr. Larson from performing the examination. Likewise in *McKitis v. Defazio,* 187 F.R.D. 225 (D.Md.1999), the plaintiff's objection that the physician was a defense doctor and that "approximately 90% of his opinions are contrary to the opinions of the physicians who actually treat the patients" was also held to be insufficient to disqualify the doctor from performing the IME.

COMBS, Judge, dissenting.

I strongly believe that we have made a mistake in intervening and interfering with the discretion of the trial judge. He is supported unequivocally by federal precedent while Kentucky law is wholly silent. I believe that he acted correctly as a matter of law and within his authority as a matter of jurisdiction.