John FRANK, Appellant,

v.

The ESTATE OF John ENDERLE, Chris Meinhart Public Administrator, Appellee.

No. 2006–CA–001106–MR.

Court of Appeals of Kentucky.

March 21, 2008.

As Modified April 18, 2008.

Michael T. Rudicil, Richard Breen Law Offices, P.S.C., Louisville, KY, for Appellant.

David K. Barnes, Deanna M. Tucker, Kelly M. Stevens, Schiller Osbourn & Barnes, PLLC, Louisville, KY, for Appellee.

Before CAPERTON, NICKELL, AND TAYLOR, JUDGES.

*OPINION*

NICKELL, Judge.

John Frank ("Frank") appeals the April 28, 2006, order of the Jefferson Circuit Court dismissing his lawsuit for failure to revive his action within one year of the death of the alleged tortfeasor, John Enderle ("Enderle"). We affirm.

### FACTS AND PROCEDURAL HISTORY

While driving in Louisville, Kentucky, on October 10, 2000, Frank and Enderle collided. Frank alleged he was injured by Enderle's negligence and filed suit to recover damages on August 6, 2003. On December 26, 2004, while the litigation was pending, Enderle died. Because he was insolvent at death, his family ultimately chose not to open a probate case, a fact the parties did not learn until July 2005.

Prior to his death, Enderle's insurance company[1] retained Deanna Tucker of the law firm of Schiller Osbourn & Barnes, PLLC ("Tucker") to represent Enderle in the litigation. On January 4, 2005, Tucker learned of her client's death during a telephone call from Joseph Enderle ("Jo-

---

1. Metropolitan Direct Property & Casualty Insurance Company was Enderle's motor vehicle liability insurer. Another insurer sought reimbursement from Metropolitan. Tucker also represented Metropolitan on the subrogation claim.

seph"), the decedent's brother. At a pretrial conference on January 14, 2005, Tucker advised the court and Frank's counsel, Michael Rudicil ("Rudicil"), that Enderle had died and she was unaware of an estate having been opened.

Trial was set for July 12, 2005, but did not go forward as scheduled. Instead, various motions were argued that day including a motion to dismiss filed on Enderle's behalf alleging Frank had not timely revived the action.[2] Copies of Enderle's death certificate [3] and obituary [4] accompanied the motion and supporting memorandum. During the hearing, Tucker provided the court and Rudicil a letter she had recently received from Joseph dated July 8, 2005, stating Enderle was insolvent at death and no probate case was opened because Enderle had no assets. Rudicil candidly admitted he had forgotten Enderle had died and stated he had even prepared his cross-examination of Enderle. Rudicil went on to say he had anticipated the family would open the estate but since that was not going to happen, he would petition the probate court to have the Public Administrator, Chris Meinhart ("Meinhart"), appointed to administer the estate. The court granted Frank time to file the probate petition and amend his complaint. The court then denied Enderle's motion to dismiss and set a pretrial conference for October 10, 2005.

Later in the day on July 12, 2005, Rudicil initiated infrequent, but cordial, correspondence with Tucker seeking information about Enderle's heirs. The exchanges, which continued through October 7, 2005, read as follows:

On July 12, 2005, Rudicil e-mailed Tucker:

> "Can you please send me a copy of Mr. Enderle's death certificate? Also, did he have any children and if so, names, dates of birth, addresses. If no children, then if his parents are living, their names, dates of birth and addresses. Lastly, if he owned any real estate or any personal property of note. I need all of this to open the estate."

On July 14, 2005, Tucker responded to Rudicil via e-mail:

> "Let me know if you did not get a copy of the death certificate. I do not know the answers to the other questions you asked. I will try to get in touch with Mr. Enderle's brother and let you know."

On August 25, 2005, Rudicil e-mailed Tucker:

> "Have you been able to obtain the information on your client's relatives so I can get a public administrator appointed? Did I see your name in the Trial Review for a case in Lexington?—ouch. Just pulling your chain."

On August 29, 2005, Tucker responded to Rudicil via e-mail:

> "I apologize. I do not yet have the information. I will follow-up with Mr. Enderle's brother. Hope you are doing well."

On September 16, 2005, Rudicil wrote Tucker via U.S. Mail:

---

**2.** While the deadline for reviving the action would not expire until December 26, 2005, one year from Enderle's death, the motion to dismiss put Frank on notice that the statute of limitations was running.

**3.** Enderle's death certificate identified Joseph Enderle as the informant and listed an address for him in Louisville, Kentucky.

**4.** The obituary, published in *The Courier–Journal* on December 28, 2004, stated, "ENDERLE, JOHN, 43, of Louisville, passed away Sunday, December 26, 2004. He was retired from the Jefferson County Public School System. Survivors include his brothers, Joseph, James and Edward and a sister, Patricia."

"Have you received the death certificate and information on Mr. Enderle's family? I need to have a public administrator appointed so we can proceed with this claim."

On September 27, 2005, Tucker responded to Rudicil via e-mail:

"In reviewing the obituary, he was survived only by siblings."

On October 3, 2005, Rudicil e-mailed Tucker:

"If you can send me the siblings' names, I need to put on the probate petition."

On October 7, 2005, Tucker responded to Rudicil via e-mail:

"From the obituary—'Survivors include his brothers, Joseph, James and Edward and a sister, Patricia.'"

Just three days after Tucker sent her last e-mail response, a pretrial conference occurred on October 10, 2005. Lasting barely a minute, and much of that time being consumed by pleasantries and the entry of appearances by counsel, the sole purpose of the hearing was to set a trial date. When asked by the court whether there was anything else to do that day, Rudicil said there was nothing else to discuss. Although the time allowed to revive his client's action was quickly running, Rudicil said nothing to the court about Tucker failing to provide the promised information to him, Tucker thwarting his efforts to open the estate, or Tucker preventing Enderle's family from speaking to him. Nothing else happened in the circuit court case until January 5, 2006, when Rudicil sought a three to four month continuance and admitted in an affidavit that he was

still setting up the estate. Tucker opposed continuing the case because the deadline for reviving the action had expired on December 26, 2005.

On December 15, 2005, Rudicil petitioned the probate court to open an estate in Enderle's name and appoint Meinhart as administrator. Rudicil's only purpose in opening the estate was "to proceed against Mr. Enderle's estate as he died during the pendency of a lawsuit against him." Attached to the petition[5] was a listing of Enderle's four siblings as named in his obituary. Addresses for Enderle's three brothers were listed on the petition but the address for his sister, Patricia, was simply listed as "unknown." The petition was to be heard December 20, 2005, but Rudicil failed to notify Enderle's siblings of the hearing by certified mail as required by KRS[6] 395.016 so the probate court passed the matter until January 2006, more than a year after Enderle's death. Although the one year deadline for reviver was to expire on December 26, 2005, Rudicil did not request an expedited hearing. On January 11, 2006, Tucker renewed her motion to dismiss. Then, on January 19, 2006, Meinhart was ultimately named as administrator of Enderle's estate.

Instead of filing a motion to substitute Meinhart as Enderle's representative in the circuit court case as required by CR[7] 25.01, on February 1, 2006, Rudicil filed an amended complaint listing Meinhart as administrator of Enderle's estate. At a hearing on February 6, 2006, attorney Richard Breen ("Breen")[8] said he would be representing Frank for purposes of the

---

5. Rudicil signed the petition as the "petitioner." He also typed his name and office address in the preparer's block but he did not sign the line provided for the "Attorney's Signature" within that block.

6. Kentucky Revised Statutes.

7. Kentucky Rules of Civil Procedure.

8. Breen is identified as the sole shareholder of Richard Breen Law Offices, P.S.C., the law firm with which Rudicil practices.

motions to dismiss. On February 14, 2006, Tucker filed a third motion to dismiss coupled with a motion to strike the amended complaint for failure to timely revive the action.

The motion to dismiss was heard on March 20, 2006. No witnesses testified, but counsel for both parties presented arguments. Breen alleged Tucker had intentionally strung Rudicil along with her electronic promises to provide information about Enderle's next-of-kin and prevented him from acquiring the names and addresses himself. According to Breen, Tucker kept up the ruse until the statute of limitations ran and then moved to dismiss the case.[9] Breen alleged the estate was estopped from arguing untimely revival because of Tucker's bad acts. David Barnes ("Barnes"), Tucker's co-counsel, appeared on behalf of Meinhart and the estate. Barnes argued Tucker had provided all the information requested by Rudicil even though Tucker had no duty to do so. Barnes noted no one had ever challenged the accuracy of the information she provided and argued Rudicil could have discovered Enderle's heirs and addresses through his own due diligence or filed the petition based on the information he already had in hand. Finally, Barnes argued the failure to timely revive the action was not Tucker's fault but rather the result of Rudicil's failure to review his own file, investigate the case prior to November 2005, and properly file the petition in a timely fashion:

On April 27, 2006, the trial court issued its order finding Enderle's motion to dismiss was properly before the court under KRS 395.278 and CR 25.01. The court went on to state that despite having no duty to provide Rudicil the names and addresses of Enderle's relatives, Tucker had in fact provided all the information Rudicil requested via her e-mail responses and even attached a copy of the death certificate and obituary to the first motion to dismiss she filed in July 2005. Furthermore, in petitioning the probate court to appoint Meinhart as administrator of Enderle's estate, Rudicil failed to notify the heirs of the December 20, 2005, hearing via certified mail, thereby delaying Meinhart's appointment until January 19, 2006,[10] which was well after the time for which reviver had already expired. The circuit court found no basis for Rudicil's reliance upon Tucker to provide information to him about Enderle's heirs, no basis for his claim that Tucker was estopped from asserting expiration of the statute of limitations as a defense; and no fraudulent concealment or false representation by Tucker. Citing KRS 395.278 and CR 25.01, the court ordered the action dismissed. The order of dismissal rendered moot other pending motions, including motions to quash two depositions. Rudicil timely appealed. We affirm.

## REVIVER

In his effort to avoid dismissal of Frank's action for missing the reviver deadline, Rudicil contends on appeal that Tucker intentionally misled him into thinking she was going to provide him the information he needed to file the probate petition. Rudicil further claims he relied on

---

**9.** Breen's argument is contrary to the record because Tucker argued the motion to dismiss the case as early as July 12, 2005.

**10.** Were we to accept Breen's argument that Tucker misled Rudicil and thereby delayed Meinhart's appointment as administrator, ultimately it was Rudicil's failure to notify Enderle's heirs of the December 20, 2005, hearing that postponed Meinhart's appointment until 2006. Meinhart could have been appointed within a year of Enderle's death had Rudicil properly notified the heirs of the hearing.

Tucker's misrepresentations to his client's detriment and he was ethically barred from contacting Enderle's relatives because he knew Tucker represented and controlled them. Tucker responds that she had no duty to investigate the case for Rudicil but did in fact provide the information he requested, more than once, as a matter of professional courtesy.

■ When a party to litigation pending in a Kentucky court dies, the action is abated, unless and until the action is revived by substituting the decedent's representative. As specified in CR 25.01(1),

[i]f a party dies during the pendency of an action and the claim is not thereby extinguished, the court, within the period allowed by law, may order substitution of the proper parties. If substitution is not so made the action may be dismissed as to the deceased party. The motion for substitution may be made by the successors or representatives of the deceased party or by any party, and, together with the notice of hearing, shall be served on the parties as provided in Rule 5, and upon persons not parties as provided in Rule 4 for the service of summons. Upon becoming aware of a party's death, the attorney(s) of record for that party, as soon as practicable, shall file a notice of such death on the record and serve a copy of such notice in the same manner provided herein for service of the motion for substitution.

CR 25.01 must be read in tandem with KRS 395.278 which directs the "application to revive an action ... shall be made within one (1) year after the death of a deceased party." Because KRS 395.278 is "a statute of limitation, rather than a statute relating to pleading, practice or procedure, and the time limit within this section is mandatory and not discretionary," neither a court nor a party may extend the one year statute of limitations. *Snyder v.*

*Snyder,* 769 S.W.2d 70, 72 (Ky.App.1989). Thus, if within one year of a litigant's death an action is not revived against the administrator of a decedent's estate and the administrator substituted as the real party in interest, then the suit must be dismissed. *Id.*

■ Whether an action has been timely revived is a matter of law. Thus, we review the trial court's order of dismissal *de novo* and without deference to its conclusions. *Cinelli v. Ward,* 997 S.W.2d 474, 476 (Ky.App.1998). Since Enderle died on December 26, 2004, the deadline for reviving the action was December 26, 2005. In the case *sub judice,* that date came and went without an estate being probated, an administrator appointed, or the public administrator being substituted as the real party in interest in the circuit court case. As stated in the trial court's order, "absent the showing of some act or conduct which misleads or deceives the plaintiff and obstructs or prevents them from instituting a suit, the action must be dismissed." *Munday v. Mayfair Diagnostic Laboratory,* 831 S.W.2d 912, 914 (Ky.1992).

## EQUITTABLE ESTOPPEL

Frank contends dismissal was inappropriate because Tucker's misrepresentations prevented him from reviving the case within a year of Enderle's death. He claims the one year statute of limitations was tolled on July 14, 2005, when Tucker sent Rudicil the e-mail saying she would "try" to contact Enderle's brother to get the names, addresses and dates of birth of any children, or if none, his parents, if living, and whether Enderle owned any property of note. Frank contends the sending of that e-mail constituted a bad act because Tucker never contacted Joseph as she said she would. Further, Frank alleges that because of Tucker's bad acts the reviver deadline expired in July 2006 rath-

er than December 2005. In response, the estate maintains dismissal was mandatory because there was no false representation by Tucker and Rudicil did not reasonably rely on Tucker to his client's detriment.

■■■ The trial court treated the motion to dismiss as a motion for summary judgment. As a reviewing court we must decide whether the trial court correctly concluded there were no genuine issues of material fact and the estate was entitled to judgment as a matter of law. *Scifres v. Kraft,* 916 S.W.2d 779, 781 (Ky.App.1996); CR 56.03. Since factual findings are not at issue, we need not defer to the trial court. *Goldsmith v. Allied Building Components, Inc.,* 833 S.W.2d 378 (Ky.1992). However, we will view the evidence in the light most favorable to Frank since he opposed the motion and will resolve all doubts in his favor. *Steelvest, Inc. v. Scansteel Service Center, Inc.,* 807 S.W.2d 476, 480 (Ky.1991). Ultimately, Frank cannot defeat the motion "without presenting at least some affirmative evidence showing that there is a genuine issue of material fact for trial." *Id.* at 482. *See also* 7 Kurt A. Philipps, Jr., David V. Kramer, and David W. Burleigh, *Kentucky Practice—Rules of Civil Procedure Annotated,* Rule 56.03, cmt. 3 at 418 (6th ed.2005).

The essential elements of equitable estoppel are "(1) conduct which amounts to a false representation or concealment of material facts, or, at least, which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert; (2) the intention, or at least the expectation, that such conduct shall be acted upon by, or influence, the other party or other persons; and (3) knowledge, actual or constructive, of the real facts. And, broadly speaking, as related to the party claiming the estoppel, the essential elements are (1) lack of knowledge and of the means of knowledge of the truth as to the facts in question; (2) reliance, in good faith, upon the conduct or statements of the party to be estopped; and (3) action or inaction based thereon of such a character as to change the position or status of the party claiming the estoppel, to his injury, detriment, or prejudice." 28 Am.Jur.2d Estoppel and Waiver § 35 and *Smith v. Howard,* Ky., 407 S.W.2d 139 (1966).

*Electric and Water Plant Board of City of Frankfort v. Suburban Acres Development, Inc.,* 513 S.W.2d 489, 491 (Ky.1974). Frank did not make the required showing. He did not show Tucker knew and concealed the truth from anyone. To the contrary, the record shows Tucker learned of her client's death on January 4, 2005, and shared that information with the court and opposing counsel on January 14, 2005. On July 8, 2005, Tucker learned more details about Enderle's death via a letter from Joseph. Tucker shared Joseph's letter and Enderle's obituary and death certificate with opposing counsel and the court on July 12, 2005. At that point Tucker had fulfilled her ethical obligation to advise the court and opposing counsel of her client's death. *Harris v. Jackson,* 192 S.W.3d 297, 305 (Ky.2006). Furthermore, at that point Frank had all the information he needed to file a probate petition and he had it months before the statute of limitations expired in December 2005.

Nothing in Tucker's e-mails convinces us she intended or expected them to influence Rudicil's actions or to lull him into inaction. The practice of law is adversarial in nature. *Id.* As such, Tucker had no reason to expect Rudicil would rely on Tucker to investigate and practice his case for his client. Like Frank, Tucker had every reason to expect Rudicil would use all reason-

able efforts and due diligence to fully represent his client. Tucker had no reason to investigate Enderle's heirs for her own purposes and Tucker certainly had no statutory or ethical duty to give Frank all the information he needed to open a probate case so Frank could continue suing Tucker's client.

Frank's suggestion that he needed the heir's addresses to complete the probate petition and that they were uniquely within Tucker's control is contradicted by the fact that the petition Rudicil ultimately filed with the probate court listed the address for Patricia Enderle as "unknown." Furthermore, despite Tucker's alleged deception, Frank was somehow able to learn the addresses of two of Enderle's brothers (Edward and James) from another source. Perhaps most troubling is Frank's assertion that he was ethically barred from contacting Joseph himself because Joseph was supposedly under Tucker's control because Tucker was representing Joseph. There is simply no evidence that Joseph ever retained Tucker or her law firm. In fact, an affidavit drafted by Frank's attorneys and signed by Joseph on March 3, 2006, plainly states, "I am not represented by an attorney concerning the lawsuit against my brother or the Probate matter which is pending as the result of the accident." Furthermore, Frank's attorneys called Joseph on two separate occasions. Unfortunately for Frank, those phone calls were not made before the one year anniversary of Enderle's death, and it appears the purpose of the January 13 and 16, 2006, calls was not to learn the identity or addresses of Enderle's heirs, but rather to prove Tucker never contacted Joseph between July 8, 2005, and January 2006, as she said she would and to secure a waiver of the statute of limitations. Frank's attempt backfired however, as evidenced by three affidavits Joseph signed in March 2006. Those affidavits confirmed: Enderle was survived by only four siblings; Joseph spoke with Tucker during the last two years but did not recall the dates or topics of their conversations; Joseph had no desire to waive any argument the estate might raise about untimely reviver; and neither Joseph nor his brother, Edward, had any desire to speak with members of the law firm representing Frank. Joseph stated in his March 23, 2006, affidavit that he felt he "was being hunted down or stalked" by Frank's attorneys. Any belief by Frank's attorneys that they could not contact Joseph themselves seems to have dissipated when they sensed the need to allege fraud.

We are deeply troubled by the fact that rather than investigating the case himself, Frank's attorney continually asked Tucker for information over a three month period. Each time Tucker responded to Rudicil based upon her own reading of the obituary or death certificate. Not until the deadline for reviving the action had already passed is there any allegation by Frank's counsel that Tucker engaged in fraud, breached her ethical duty, and concealed the truth. It is curious to us that between July 14, 2005, and the reviver deadline of December 26, 2005, Frank never moved the court to compel Tucker to act even though he had the perfect opportunity to do so at the October 10, 2005, pretrial conference when the court specifically asked if anything needed to be discussed. Lastly, but for Rudicil's failure to notify Enderle's heirs of the December 20, 2005, probate hearing, Meinhart could have been appointed administrator within the statutorily prescribed year.

At some point it became incumbent upon Frank to do something. For reasons not explained in the record, Frank's attorney chose to wait until November 2005 to begin researching the case. Then, he filed the probate petition in December 2005, but

failed to notify the heirs of the hearing so it was delayed until January 2006. Although it was Frank's responsibility to know the one year anniversary of Enderle's death was fast approaching and failure to timely revive the action would be a death knell, *Burke v. Blair,* 349 S.W.2d 836, 837 (Ky.1961), his attorney still did not move the probate court to expedite the hearing in order to beat the deadline. As a result of these missteps, which are in no way attributable to Tucker, Meinhart was not appointed administrator of Enderle's estate until January 19, 2006. In light of the facts presented to us, it was unreasonable for Rudicil to wait on Tucker's alleged promises or to rest on her alleged assurances.

Contrary to Frank's assertions, the trial court correctly applied *Burke* in dismissing the case. *Burke* prevents a party who has induced a party not to act "by his false representations or fraudulent concealment[,]" from asserting the statute of limitations. *Id.* "However, the fraudulent action must be of a character to prevent inquiry or elude an investigation or otherwise mislead the party having cause of action, and such party is under the duty to exercise reasonable care and diligence. See 53 C.J.S. Limitations of Actions § 25." Nothing Tucker did rose to the level of fraud or prevented Frank from conducting his own investigation. Frank, through his attorney, simply did not exercise reasonable care and diligence in investigating the case.

Summary judgment is appropriate when a movant shows the adverse party cannot prevail under any circumstances. *Steelvest, supra,* 807 S.W.2d at 480; *Paintsville Hospital Co. v. Rose,* 683 S.W.2d 255 (Ky. 1985). In light of the facts presented to us, we envision no version under which Frank could prevail. Contrary to Frank's argument, the Enderle estate was not estopped from arguing Frank failed to timely revive the cause of action.

## DEPOSITIONS

■ Frank maintains he should have been allowed to depose Tucker and Joseph to prove Tucker never contacted Joseph as she stated in an e-mail she would "try" to do. The operative word here is "try," a term Webster's Dictionary defines as an "attempt" without any requirement of success. Frank has given us no reason to believe Tucker did not "try" to reach Joseph. The affidavits signed by Joseph in March 2006 indicated he spoke with Tucker in 2005 and 2006 although he could not recall specific dates or topics of their conversations. His March 2, 2006, affidavit confirmed Enderle was survived by only four siblings, a fact Frank had known since at least July 12, 2005, and we have no reason to believe Joseph would testify differently if deposed today. As for Frank's desire to depose Tucker, under the facts presented to us, we will not reward him with a fishing expedition of opposing counsel's files and billing records from the date of her client's death forward. The trial court did not abuse its discretion in denying Frank the opportunity to take discovery on an irrelevant matter. *Manus, Inc. v. Terry Maxedon Hauling, Inc.,* 191 S.W.3d 4, 8 (Ky.App.2006) citing *Sexton v. Bates,* 41 S.W.3d 452 (Ky.App.2001) and *The Goodyear Tire & Rubber Co. v. Thompson,* 11 S.W.3d 575, 577 (Ky.2000). Once the trial court decided Frank did not timely revive the case, the motions to quash depositions and enter protective orders concerning the depositions and subpoenas were rendered moot.

## PROPRIETY OF MOTIONS TO DISMISS

Finally, Frank contends the motion to dismiss was both a nullity and untimely.

He claims it was a nullity because Tucker had no client to represent after Enderle's death. Of course, this view conflicts with Frank's prior argument that he was ethically barred from contacting Joseph directly because he knew Tucker was representing Joseph. To put it bluntly, Frank cannot have it both ways. Furthermore, we are mindful that there was no requirement that a motion to dismiss be filed at all, although it did alert the court the deadline for reviving the action had expired. At that point, under CR 25.01, the court could have *sua sponte* dismissed the action.

■ Frank argues the third motion to dismiss was untimely because it was filed five days after the deadline for dispositive motions set by the trial court in a pretrial order. CR 16 allows a court to set a pretrial schedule and to modify it "at or before the trial to prevent manifest injustice." Under the facts we review today, the timing of the motion to dismiss was not fatal and the trial court did not abuse its discretion in considering it.

## CONCLUSION

It is regrettable when a case is dismissed due to an attorney missing a deadline because it is the client who suffers the brunt of the dismissal. Here, a continuing course of mistakes by Frank's counsel resulted in the failure to timely revive the cause of action within one year of the alleged tortfeasor's death. Based upon our rules and statutes, dismissal was the appropriate result and indeed mandatory. For the foregoing reasons, the order of the Jefferson Circuit Court dismissing the action is affirmed.

CAPERTON, Judge, concurs.

TAYLOR, Judge, concurs in result only.