# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED." PURSUANT TO THE RULES OF CIVIL PROCEDURE PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C), THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE CITED OR USED AS BINDING PRECEDENT IN ANY OTHER CASE IN ANY COURT OF THIS STATE; HOWEVER, UNPUBLISHED KENTUCKY APPELLATE DECISIONS, RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED DECISION IN THE FILED DOCUMENT AND A COPY OF THE ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE DOCUMENT TO THE COURT AND ALL PARTIES TO THE ACTION.

RENDERED: OCTOBER 28, 2021
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

## 2021-SC-0188-MR

MARIAH BRADBERRY                                                               APPELLANT

V.
ON APPEAL FROM THE COURT OF APPEALS
NO. 2019-CA-1510
JEFFERSON CIRCUIT COURT NO. 17-CI-005407

HONORABLE. A.C. MCKAY CHAUVIN,                                     APPELLEE
JUDGE, JEFFERSON CIRCUIT COURT

AND

ALLSTATE PROPERTY & CASUALTY                         REAL PARTY IN
INSURANCE COMPANY                                   INTEREST/APPELLEE

## MEMORANDUM OPINION OF THE COURT

## **AFFIRMING**

Mariah Bradberry appeals to this Court from the order of the Court of

Appeals denying her application for a writ of prohibition[1] seeking to prevent the

trial court from enforcing its order requiring her to undergo a medical

examination under Kentucky Rule of Civil Procedure (CR) 35.01. The Court of

Appeals found Bradberry met the irreparable-harm requirements for a writ

because undergoing a potentially unnecessary medical examination would

---

[1] Kentucky Rule of Civil Procedure 76.36(7)(a) ("An appeal may be taken to the Supreme Court as a matter of right from a judgment or final order in any proceeding originating in the Court of Appeals.").

result in irreparable harm to Bradberry, but the appellate panel ultimately declined to issue the writ, finding that the trial court had not abused its discretion in ordering Bradberry to undergo an examination. Bradberry argues on appeal that the Court of Appeals erred by denying her writ application because it failed to conduct a proper de novo review of the merits of her writ request and by denying the writ application. We reject Bradberry's argument. The Court of Appeals properly denied the writ even though it erred by concluding that Bradberry's writ application met the irreparable-harm standard.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Mariah Bradberry was a passenger on a city bus operated by the Transit Authority of River City (TARC) when the bus rear-ended an automobile. Claiming a physical injury caused by the collision, Bradberry immediately sought chiropractic treatment and demanded from Allstate Property & Casualty Insurance Company, the insurer assigned to pay no-fault benefits through the Kentucky Assigned Claims plan, payment of no-fault insurance benefits to cover the cost of her chiropractic treatment.

Two days after the collision, Bradberry reported to a chiropractor that her pain had worsened and had spread to her neck, middle, and lower back. She treated with the chiropractor for some 51 days post collision, reporting that the back and neck pain persisted. During that same time span, Bradberry met with her primary-care physician multiple times but did not say anything about back pain.

2

Allstate alleges that a video of the interior of the bus at the time of the collision calls into question whether Bradberry sustained any injuries at all. An EMT report from the day of the accident reveals that originally Bradberry had only complained of neck pain, and emergency room records stated that Bradberry only complained of a moderate level of pain in her neck and that her lower back was tender. Based on the conflicting facts, Allstate petitioned the circuit court in 2019 for an order directing Bradberry to undergo a medical examination under KRS[2] 304.39-270.[3] Bradberry responded by suing Allstate, alleging that it unlawfully refused to pay no-fault benefits.

Allstate argued that Bradberry put her physical condition at issue and a genuine dispute exists over whether she suffered any injury at all. The trial court ordered the examination, finding that Allstate had demonstrated good cause under the statute to warrant a physical examination. The trial court limited the scope of the examination to the injuries Bradberry claimed to have suffered in the bus collision and to a two-hour time limit. Bradberry appealed the circuit court's order, and the Court of Appeals remanded the case for the trial court to provide a fuller factual explanation of its finding of good cause. On remand, the trial court again granted the examination but provided a more

---

[2] Kentucky Revised Statute.

[3] KRS 304.39-270 ("If the mental or physical condition of a person is material to a claim for past or future basic or added reparation benefits, the reparation obligor may petition the circuit court for an order directing the person to submit to a mental or physical examination by a physician. Upon notice to the person to be examined and all persons having an interest, the court may make the order for good cause shown. The order shall specify the time, place, manner, conditions, scope of the examination, and the physician by whom it is to be made.").

thorough recitation of facts supporting its finding that Allstate had shown good cause.

Bradberry then filed this application for a writ to prevent enforcement of the trial court's order. Bradberry argued she suffered no permanent injuries, so a physical examination would not reveal anything relevant to her claim. The Court of Appeals reviewed the merits of the circuit court's order, having first concluded that Bradberry's claim of having to undergo a potentially unnecessary medical examination constituted an irreparable harm. But upon a review of the merits of Bradberry's writ application, the appellate panel ultimately declined to issue a writ, ruling that the trial court did not abuse its discretion in ordering the examination. Bradberry then appealed to this Court as a matter of right.

## II. ANALYSIS

We begin our review by noting that "[t]he issuance of a writ is an extraordinary remedy that is disfavored by our jurisprudence."[4] Writs should be granted both cautiously and conservatively because "they are truly extraordinary in nature and are reserved exclusively for those situations where litigants will be subjected to substantial injustice if they are required to proceed."[5] When reviewing a writ application, we must first determine that the applicant will suffer irreparable harm and has no adequate remedy by appeal

---

[4] *Caldwell v. Chauvin,* 464 S.W.3d 139, 144–45 (Ky. 2015) (citing *Ridgeway Nursing & Rehab. Facility, LLC v. Lane,* 415 S.W.3d 635, 639 (Ky. 2013); *Bender v. Eaton,* 343 S.W.2d 799, 800 (Ky. 1961)).

[5] *Independent Ord. of Foresters v. Chauvin,* 175 S.W.3d 610, 615 (Ky. 2005).

4

or otherwise before we will proceed to review the merits of the trial court's decision.[6]  "No adequate remedy by appeal" means that a litigant's harm would not be rectified in any sort of subsequent proceedings.[7]  Finally, we must keep in mind that "[a] writ of prohibition is an extraordinary and discretionary remedy."[8]

Bradberry alleges that she would have no remedy by appeal and would face irreparable harm by the threat of a contempt-of-court action if she refused to undergo the examination.  Further, she alleges she would suffer irreparable harm with no adequate appealable remedy if she had to undergo, in her opinion, an unnecessary medical examination that would reveal only irrelevant information.[9]

---

[6] *Chauvin*, 464 S.W.3d at 146 ("Proof of the elements described above is a condition precedent to contemplation of the merits underlying a writ petition. Strict adherence to these prerequisites 'is a practical and convenient formula for determining, *prior to deciding the issue of alleged error,* if petitioner may avail himself of this remedy.' These strictures evince a reluctance to reach the merits of alleged errors in writ proceedings. Indeed, the test that must be satisfied before the Court may analyze the alleged error was designed expressly to limit 'the number of writ cases that proceed to the merits of the controversy' because writ proceedings 'necessitate an abbreviated record which magnifies the chance of incorrect rulings that would prematurely and improperly cut off the rights of litigants.' It bears repeating that the issuance of a writ is inherently discretionary. Even if the requirements are met and error found, the grant of a writ remains within the sole discretion of the Court.").

[7] *Ridgeway Nursing & Rehab. Facility,* 415 S.W.3d at 640 (quoting *Bender,* 343 S.W.2d at 802).

[8] *Sexton v. Bates*, 41 S.W.3d 452, 455 (Ky. App. 2001).

[9] We recognize that in 2019 we issued the unpublished opinion *Streeval v. Edwards*, 2019-SC-000068-MR, 2019 WL 4072961 (Ky. Aug. 29, 2019).  The facts of *Streeval* are similar to the facts here.  There, the plaintiff too sought a writ of prohibition to prevent the trial court's enforcement of a potentially unnecessary IME order.  We ultimately denied the writ after addressing the merits of the petitioner's claim under the substantial miscarriage of justice class of writs.  Therefore, it is but another example of this Court declining to issue a writ to prevent the enforcement of a typical IME order where the petitioner has put their physical condition at issue.

As to the first theory of harm alleged by Bradberry, the possibility of being held in contempt, the Court of Appeals found Bradberry had an adequate remedy by appeal. Thus, the threat of contempt was insufficient to justify the issuance of a writ. But as to Bradberry's second alleged harm, being subjected to a potentially unnecessary medical examination, the Court of Appeals found Bradberry would have no adequate remedy by appeal and irreparable harm could result if the trial court had acted erroneously. So the appellate panel proceeded to address the merits of Bradberry's writ application.

We agree with the Court of Appeals' conclusion that the threat of a sanction in the form of contempt is insufficient to justify a writ.[10] We also agree with the appellate court's conclusion that if Bradberry's undergoing an unnecessary medical examination is not something that could be rectified through legal remedies, she would have no adequate remedy by appeal.[11] As explained in *Caldwell v. Chauvin*, in discovery disputes involving the disclosure of information, the potential injury occurs when the information is shared and, because it cannot be recalled, it cannot be rectified in later proceedings.[12] But

---

[10] *Newell Enters. Inc. v. Bowling*, 158 S.W.3d 750, 756–57 (Ky. 2005) ("Thus, today, possible sanctions for contempt, standing alone, may not mean irreparable harm for which no adequate remedy by appeal exists. A petition to prohibit possible sanctions for contempt stands on its own merits, and a writ will not issue unless it is shown that the standard for the issuance of a writ has been met. On this point, we simply note that because almost any contempt finding by the circuit court would be appealable, the remedy of a writ is inappropriate.").

[11] *Caldwell v. Chauvin*, 464 S.W.3d 139, 146 (Ky. 2015).

[12] *Id.* ("We have often held discovery disputes satisfy the no-adequate-remedy-by-appeal requirement. Cases so holding often focus on the inability of information disclosed under an erroneous discovery order to be recalled. In those cases, '[t]he

for reasons explained below, we disagree with the appellate panel's holding that the medical examination at issue here would rise to the level of a potential irreparable harm to Bradberry. Accordingly, we decline to address the merits of her petition.

The Court of Appeals found Bradberry's having to undergo a potentially unnecessary medical examination to be an irreparable harm sufficient to warrant review of the merits of the case because the examination itself could not later be undone. Irreparable harm has been defined by this Court as an "incalculable damage to the applicant . . . *either to the liberty of his person,* or to his property rights, or other far-reaching and conjectural consequences."[13] Further, irreparable injury has been described as "great and ruinous loss . . . for which there was no remedy."[14] These descriptions of what constitutes an irreparable harm indicate that the harm must be more than the fact that the examination cannot be undone. Although the fact that a revelation made in discovery cannot later be unrevealed may sometimes mean the writ applicant has no adequate remedy by appeal, such a circumstance does not automatically mean the harm caused by the revelation in discovery is so ruinous to be classified as irreparable.

---

injury suffered . . . will be complete upon compliance with the order and such injury could not thereafter be rectified in subsequent proceedings in the case.'").

[13] *Hoskins v. Maricle* 150 S.W.3d. 1, 19 (Ky. 2004) (citing *Litteral v. Woods,* 4 S.W.2d 395 (Ky. 1928)) (emphasis added).

[14] *Id.* at 20 (citing *Osborn v. Wolfford,* 39 S.W.2d 672, 673 (Ky. 1931)).

The appellate panel cites *Sexton v. Bates* to support its ruling that Bradberry would suffer from irreparable harm.[15]  While *Sexton*, like this case, involved a writ of prohibition and a trial court's medical-examination order, the harm justifying a review of the merits was much different than alleged here.[16] In *Sexton*, the trial court ordered the plaintiff to undergo a medical examination.[17]  The plaintiff objected not to the examination itself but to Sexton's choice of examining physician because of a claim of the examiner's bias in favor of the defendant.[18]  After the objection, based only on the fact that the defendant's physician often testified for defendants in these matters, the trial court rejected the defense's choice of physician and chose its own physician to examine the plaintiff.[19]

Sexton sought a writ to prevent the plaintiff from being examined by the trial court's choice of doctor rather than his own.[20]  Sexton argued that the plaintiff's objection to the defense's choice of physician for potential bias was not "a valid objection" that required the trial court to exercise its discretion and choose a physician.[21]  Sexton also argued that being kept from using his chosen physician to examine the plaintiff would limit his defense in a way that

---

[15] *Sexton*, 41 S.W.3d at 452.

[16] *Id*. at 453–54.

[17] *Id*. at 454.

[18] *Id*.

[19] *Id*.

[20] *Id*.

[21] *Id*. at 454–55.

the plaintiff's case is not limited.[22]  In reviewing Sexton's writ application, the

Court of Appeals found Sexton would suffer irreparable harm if the plaintiff

was examined by the trial court's doctor instead of the one the defendant

chose.[23]  The Court of Appeals stated that while it did not accept all of Sexton's

contentions of irreparable harm, a full review of the merits was warranted.[24]

Ultimately, the Court of Appeals found the requirements of a second-class writ

had been satisfied and addressed the merits of Sexton's writ application.[25]

At most, *Sexton* stands for the proposition that a trial court's order

denying discovery in a way that severely interferes with the writ applicant's fair

presentation of his case may result in an irreparable harm justifying an

analysis of the merits of the writ application.  But Bradberry is not arguing that

her case will be limited by a lack of information.  Instead she argues the

defense's discovery of too much information will prejudice her case.  So, the

potential harm Bradberry will allegedly suffer from undergoing this medical

examination is the opposite of the harm the defendant in *Sexton* suffered that

warranted a review of the merits of the case.

In fact, Bradberry's only alleged theories of harm stemming from the

examination are that she faces a possible sanction of contempt until she agrees

to submit to the examination and that the examination may uncover irrelevant

---

[22] *Id.* at 454.

[23] *Id.* at 455.

[24] *Id.*

[25] *Id.*

information. To be clear, Bradberry does not argue that the medical examination will be invasive, harmful, or burdensome. Instead, she simply argues the medical examination will not reveal any relevant information because she no longer suffers from the injuries caused by the collision and the medical costs she seeks are only for the treatment of acute injuries she once suffered. We find this potential harm to be insufficient to satisfy the requirements for a writ of the second class.

Several cases support our conclusion that Bradberry has not alleged a specific, almost certain harm of ruinous nature. In *Chauvin*, we took up a writ preventing the enforcement of a trial court's order allowing the respondent to have ex parte communications with the petitioner's physicians.[26] The petitioner argued a writ was warranted because the order violated HIPAA.[27] We agreed that the petitioner would have no remedy by appeal because the information could not be recalled once it was disclosed, and we addressed the merits because of the novel issue they raised. But as for the harm alleged, we described it as "too speculative" to warrant the issuance of a writ.[28] We find

---

[26] *Chauvin*, 464 S.W.3d at 145.

[27] *Id*. at 146.

[28] *Id*. at 159 ("We decline to exercise our discretion to issue a writ in this instance even though any ex parte disclosure of protected health information would surely violate HIPAA. This injury is too speculative to merit such an extraordinary remedy. The order leaves the treating physicians' participation in the ex parte interview and the disclosure of Caldwell's medical information—if they do choose to undertake the interview—to the doctors' discretion. The harm is not immediate enough to require an extraordinary remedy to rectify Caldwell's potential grievance.").

10

that to be the case here as well, as Bradberry has only alleged that potentially irrelevant information will be uncovered because of her examination.

Further, in *Grange Mut. Ins. Co. v. Trude,*[29] we explained that the discovery of irrelevant information may sometimes warrant a review of the merits, such as when a great privacy interest like trade secrets will allegedly be disclosed.[30]  But *Trude* held that more often a "showing [of] irrelevancy is not a method of proving great and irreparable injury.  Mere possession of irrelevant information by an opposing party is not 'something of a ruinous nature.'"[31]  So while *Trude* acknowledged "discovery of irrelevant material could fall under the certain special cases exception, allowing a court to forego the great and irreparable harm requirement in the interests of justice[,]" we find it does not here because Bradberry has only shown a speculative harm of the discovery of irrelevant information.[32]  For example, in *Allstate Prop. & Cas. Ins. Co. v. Kleinfeld*, while ultimately declining to issue the writ, we reviewed the merits of a petition because the applicant had alleged that several of the to-be-disclosed discovery requests were akin to trade secrets.[33]  But still we found the applicant had not alleged an irreparable harm because he failed to articulate

---

[29] 151 S.W.3d 803, 808 (Ky. 2004).

[30] *Id.* at 817.

[31] *Id.* at 811 (citing *Bender v. Eaton,* 343 S.W.2d 799, 802 (Ky. 1961)).

[32] *Id.* (citing *Carpenter v. Wells,* 358 S.W.2d 524, 527–28 (Ky. 1962)).

[33] 568 S.W.3d 327 (Ky. 2019).

specifically how the discovery of irrelevant information would be of such an injurious nature.[34]

We find the harm alleged here to be akin to the harm alleged in *Trude*, and we often find a writ petition alleging an unspecific, general harm to be insufficient to satisfy the requirements of a writ. Bradberry's alleged irreparable harm is only that the medical examination will reveal irrelevant information, so she will be undergoing an unnecessary medical examination. But this is a speculated harm. While it is unlikely the medical examination in this case would produce irrelevant information given that Bradberry has put her physical condition directly at issue by seeking payment from Allstate, the trial court remains as the gatekeeper sifting irrelevant evidence.[35] So Bradberry can still ask the trial court to rule on the relevance of any information disclosed by the medical examination.

Further, even though Bradberry does not argue the medical examination itself constitutes irreparable harm because it violates her privacy or is overly intrusive, legal safeguards have been put in place so that litigants are not subjected to overly intrusive medical examinations. The trial court has already limited the length and scope of the examination. And if Bradberry felt the examination was too extensive, she could, for example, avail herself of a protective order, request the examination be further limited in duration or

---

[34] *Id.* at 335.

[35] *Toyota Motor Corp. v. Gregory,* 136 S.W.3d 35, 39 (Ky. 2004).

scope, or make an otherwise valid objection to the examining physician.[36]  But she has not pursued any of these measures.

We conclude that when, as here, a writ applicant seeking to prevent a medical examination states no particularized harm other than the discovery of irrelevant information, the applicant has failed to meet the requirement of showing irreparable harm to justify the issuance of a writ of the second class. Because Bradberry has not alleged a harm so ruinous in nature to justify reviewing the merits of the case, we decline to do so and further deny her writ of prohibition.[37]

### III.        CONCLUSION

We affirm the Court of Appeals' decision to deny Bradberry's petition for a writ of prohibition, but for different reasons.  Therefore, we remand this matter to the circuit court to be dealt with consistent with this opinion.

All sitting.  All concur.

---

[36] *Klienfeld*, 568 S.W.3d at 335 ("Rather than simply conclusively asserting that the information Allstate seeks constitutes privileged 'trade secrets,' Dr. Kleinfeld could have done several things to help prove his case. For example, Dr. Kleinfeld could have attached for in-camera review some examples of the information he seeks to characterize as privileged trade secrets. Simple conclusory assertions that certain information constitutes privileged trade secrets are not enough for the granting of an extraordinary writ.").

[37] While declining to address the merits, we find it pertinent to mention that *Government Emps. Ins. Co. v. Sanders*, 569 S.W.3d 923 (Ky. 2018), involved a question of statutory interpretation of the MVRA.  Interpretations of statutes are entirely a question of law entitled to de novo review.  However, a trial court's determination of good cause is reviewed for abuse of discretion. *See Metropolitan Prop. & Cas. Ins. Co. v. Overstreet*, 103 S.W.3d. 31 (Ky. 2003) ("applying 'abuse of discretion' standard to trial court's decision as to whether insurer had shown 'good cause' for a physical examination under KRS 304.39–270") (citing *Miller v. United States Fid. & Guar. Co.,* 909 S.W.2d 339, 342 (Ky. App. 1995)).

COUNSEL FOR APPELLANT:

Edward A. Brutscher


APPELLEE:

Honorable A. C. McKay Chauvin
Judge, Jefferson Circuit Court


COUNSEL FOR APPELLEE:

Eric S. Rice
R. Christian Garrison
Quintairos, Prieto, Wood & Boyer, P.A.