**Tiara ENGLE and Portner Orthopedic Rehabilitation, Incorporated, Plaintiffs,**

v.

**LIBERTY MUTUAL FIRE INSURANCE COMPANY, et al., Defendants.**

Civ. No. 04–00256 SOM/BMK.

United States District Court, D. Hawai'i.

July 11, 2005.

Harvey M. Demetrakopoulos, argued, Roy K.S. Chang, appeared, but did not argue, Shim & Chang, Honolulu, HI, for Plaintiffs.

R. John Seibert, argued, McCorriston Miller Mukai MacKinnon LLP, Honolulu, HI, for Defendants.

*ORDER GRANTING DEFENDANT LIBERTY MUTUAL FIRE INSURANCE COMPANY'S MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS; ORDER GRANTING LIBERTY MUTUAL'S MOTION FOR PARTIAL SUMMARY JUDGMENT*

MOLLWAY, District Judge.

## I. *INTRODUCTION.*

What does it mean to be included? Much of this insurance coverage dispute turns on how one dissects the unassuming word "including" as it is used in a Hawaii insurance statute. Plaintiffs, an insured and her treatment provider, say the word "including" introduces examples, so that a reference to an independent medical examination ("IME") as "including" a record review means that a record review is a kind of IME. Defendant Liberty Mutual Fire Insurance Company, by contrast, says that "including" introduces component parts, so that the record review is included in the IME, but is not itself an IME. This exercise in lexicography is the subject of a motion for partial summary judgment brought by Liberty Mutual and of a counter-motion brought by Plaintiffs Tiara Engle and Portner Orthopedic Rehabilitation, Incorporated. The court grants Liberty Mutual's motion for partial summary judgment and denies Plaintiffs' counter-motion.

Liberty Mutual also moves for judgment on the pleadings as to certain other claims. That motion is unopposed and is granted.

## II. *BACKGROUND.*

On May 2, 2003, Engle was a passenger in a car that was involved in an accident. The car was insured by Liberty Mutual, and Engle sought benefits under the "Personal Injury Protection" provisions of Liberty Mutual's policy. Liberty Mutual paid Engle's bills for emergency room treatment on the day of the accident and for later massage and chiropractic treatment at Portner Orthopedic through August 2003.

On November 10, 2003, Liberty Mutual asked Dr. Clifford Lau, an orthopedist, to perform a "record review" of Engle's medical condition and to opine on, among other things, whether Engle required future treatment. In retaining Dr. Lau, Liberty Mutual cautioned Dr. Lau that his charges for completing the assignment could not exceed the fee limits for IMEs set forth in Haw.Rev.Stat. § 431:10C–308.5(b).

Based on his review of Engle's medical records, Dr. Lau opined that further treatment was not necessary. Liberty Mutual then issued a "Denial of Claim" letter to Engle, stating that Liberty Mutual would no longer pay for Engle's treatments. Engle continued to receive treatments, and Portner continued to bill Liberty Mutual for these treatments.

On March 8, 2004, Plaintiffs filed suit in the First Circuit Court of the State of Hawaii. Their Complaint alleged tortious breach of contract, as well as violations of Haw.Rev.Stat. §§ 431:13–103(a)(11), 431:10C–308.5(b), and Haw.Rev.Stat. Ch. 480. Plaintiffs sought general damages, special damages, "[o]ther economic and non-economic damages," punitive damages, treble damages, prejudgment interest, costs, and reasonable attorney's fees.

On April 21, 2004, Liberty Mutual removed that case to this court. In its Notice

of Removal, Liberty Mutual stated that "the amount in controversy is greater than $75,000.00, exclusive of interest and costs."

## III. STANDARD OF REVIEW.

Rule 12(c) of the Federal Rules of Civil Procedure states:

After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings. If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

The standard governing a Rule 12(c) motion for judgment on the pleadings is essentially the same as that governing a Rule 12(b)(6) motion. The motion will not be granted if, accepting as true all material allegations contained in the nonmoving party's pleadings, the moving party is entitled to judgment as a matter of law. *Lake Tahoe Watercraft Recreation Ass'n v. Tahoe Reg'l Planning Agency*, 24 F.Supp.2d 1062, 1066 (E.D.Cal.1998). For a Rule 12(c) motion, the allegations of the nonmoving party must be accepted as true, while the allegations of the moving party that have been denied are assumed to be false. *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1550 (9th Cir.1989). Judgment on the pleadings is proper when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law. *Id.* However, judgment on the pleadings is improper when the district court goes beyond the pleadings to resolve an issue; such a proceeding must properly be treated as a motion for summary judgment. *Id.*

Summary judgment shall be granted when

the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c); *see also Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir.2000). One of the principal purposes of summary judgment is to identify and dispose of factually unsupported claims and defenses. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Summary judgment must be granted against a party who fails to demonstrate facts to establish what will be an essential element at trial. *Id.* at 322, 106 S.Ct. 2548. The burden initially lies with the moving party to identify for the court "the portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir.1987) (citing *Celotex Corp.*, 477 U.S. at 323, 106 S.Ct. 2548). "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (footnote omitted). The nonmoving party may not rely on the mere allegations in the pleadings and instead must set forth "specific facts showing that there is a genuine issue for trial." *Id.* At least some " 'significant probative evidence tending to support the complaint' " must be produced. *Summers v. A. Teichert & Son, Inc.*, 127

F.3d 1150, 1152 (9th Cir.1997) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). "[I]f the factual context makes the non-moving party's claim implausible, that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial." *Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir.1987) (citing *Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348).

However, when "direct evidence" produced by the moving party conflicts with "direct evidence" produced by the party opposing summary judgment, "the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact." *T.W. Elec. Serv.*, 809 F.2d at 631. All evidence and inferences must be construed in the light most favorable to the nonmoving party. *Id.* Inferences may be drawn from underlying facts not in dispute, as well as from disputed facts that the judge is required to resolve in favor of the nonmoving party. *Id.*

## IV. ANALYSIS.

### A. This Court Has Jurisdiction In This Matter.

A district court has diversity jurisdiction over a case in which the plaintiff and defendant are not citizens of the same state and in which the amount in controversy exceeds $75,000, as measured at the time of removal. *See Sparta Surgical Corp. v. Nat'l Ass'n of Sec. Dealers, Inc.*, 159 F.3d 1209, 1213 (9th Cir.1998). When, as here,

a defendant requests removal from state court and the complaint does not allege an amount in controversy, the removing defendant must prove the amount in controversy by a preponderance of the evidence. *See Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir.1996).

 Although the Complaint did not state a specific damage amount, it clearly prayed for compensatory and punitive or treble damages, as well as attorney's fees. Liberty Mutual's Notice of Removal stated that "the amount in controversy is greater than $75,000.00." Plaintiffs do not present any evidence that, at the time of removal, a lesser amount was in controversy.[1] Having examined the record, the court concludes, by a preponderance of the evidence, that the amount in controversy requirement is satisfied in this case.

### B. Liberty Mutual's Motion for Partial Judgment on The Pleadings is Granted.

Plaintiffs have brought claims under Haw.Rev.Stat. § 431:13 and Haw.Rev.Stat. Chapter 480, and for tortious breach of contract. Under Fed.R.Civ.P. 12(c), Liberty Mutual moves for judgment on the pleadings on these claims, arguing that there is no private right of action under Haw.Rev.Stat. § 431:13, that Plaintiffs have no standing to bring a claim under chapter 480, and that the Hawaii Supreme Court has eliminated the cause of action for tortious breach of contract. Plaintiffs do not oppose Liberty Mutual's motion for partial judgment on the pleadings. Accordingly, Liberty Mutual's motion for

---

**1.** At the July 5, 2005, hearing on the present motions, Plaintiffs represented that, because many of the claims listed in the Complaint were not viable and were therefore the subject of a judgment on the pleadings, only a small damage claim and the possibility of punitive damages (plus interest, costs, and attorney's fees) remained in this case. The court, however, must measure the amount in controversy at the time of filing, not at the time of the hearing. Accordingly, Plaintiffs' statement does not affect this court's jurisdiction.

judgment on the pleadings is granted with respect to these claims.

C. *Liberty Mutual Was Not Required to Follow the IME Procedures Set Forth in Haw.Rev.Stat. § 431:10C-308.5(b) for Dr. Lau's Record Review.*

1. *This Court, Sitting In Diversity, Follows State Law.*

Federal courts sitting in diversity must apply substantive state law. *See Feldman v. Allstate Ins. Co.,* 322 F.3d 660, 666 (9th Cir.2003). In this case, the court follows substantive Hawaii law. The court "must use its best judgment to predict how the Hawaii Supreme Court would decide the issue." *Burlington Ins. Co. v. Oceanic Design & Const., Inc.,* 383 F.3d 940, 944 (9th Cir.2004). A federal district court may look to state trial court decisions as persuasive authority, but those decisions are not binding on the federal court. *See Spinner Corp. v. Princeville Dev. Corp.,* 849 F.2d 388, 390 (9th Cir.1988); *see also King v. Order of United Commercial Travelers of America,* 333 U.S. 153, 161, 68 S.Ct. 488, 92 L.Ed. 608 (1948).

The court is aware that, on June 30, 2005, shortly before this court's hearing on July 5, 2005, Judge Bert I. Ayabe of the First Circuit Court of the State of Hawaii issued a minute order in *Sakoda v. AIG Hawaii Ins. Co, Inc.,* Civil No. 04-1-0436, interpreting the very provision at issue in this case. Judge Ayabe ruled that a record review was indeed an IME under state law. Under the rules articulated by the Ninth Circuit, Judge Ayabe's order is of persuasive value to this court, but is not binding authority.

2. *A Record Review Is Not An Independent Medical Examination.*

■ Having been informed of Judge Ayabe's ruling, this court, following the hearing on the present motions, restudied the IME issue. Notwithstanding the great respect this court has for Judge Ayabe, this court remains convinced that the Hawaii Supreme Court would not apply IME statutory requirements to a mere record review or to an opinion based only on a record review.

Section 431:10C-308.5(b) of the Hawaii Revised Statutes limits the charges that providers may receive for IMEs. The statute also imposes other requirements on IMEs and IME providers. The statute states, in relevant part:

> The charges and frequency of treatment for services specified in section 431:10C-103.5(a) ... shall not exceed the charges and frequency of treatment permissible under the workers' compensation supplemental medical fee schedule. Charges for independent medical examinations, including record reviews, physical examinations, history taking, and reports, to be conducted by a licensed Hawaii provider unless the insured consents to an out-of-state provider, shall not exceed the charges permissible under the appropriate codes in the workers' compensation supplemental medical fee schedule.

> \* \* \* \* \* \*

> The independent medical examiner shall be selected by mutual agreement between the insurer and claimant; provided that if no agreement is reached, the selection may be submitted to the commissioner, arbitration or circuit court. The independent medical examiner shall be of the same specialty as the provider whose treatment is being reviewed, unless otherwise agreed by the insurer and claimant.

Haw.Rev.Stat. § 431:10C-308.5(b).

Plaintiffs contend that, because Dr. Lau was not selected by mutual agreement and

because he did not have the same specialty as the provider whose treatment was being reviewed, Liberty Mutual violated Haw. Rev.Stat. § 431:10C–308.5. Liberty Mutual, by contrast, argues that Haw.Rev.Stat. § 431:10C–308.5 does not apply to record reviews conducted in the absence of physical examinations. The court agrees with Liberty Mutual and concludes that the IME provisions in Haw.Rev.Stat. § 431:10C–308.5(b) do not apply to a record review performed in isolation, without other accompanying procedures necessary to complete an IME, particularly an in-person examination.

With respect to statutory interpretation, the Hawaii Supreme Court has stated:

> When construing a statute, our foremost obligation is to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself. And we must read statutory language in the context of the entire statute and construe it in a manner consistent with its purpose.
>
> When there is doubt, doubleness of meaning, or indistinctiveness or uncertainty of an expression used in a statute, an ambiguity exists. . . .
>
> In construing an ambiguous statute, the meaning of the ambiguous words may be sought by examining the context, with which the ambiguous words, phrases and sentences may be compared, in order to ascertain their true meaning. Moreover, the courts may resort to extrinsic aids in determining legislative intent. One avenue is the use of legislative history as an interpretive tool.

*Gray v. Administrative Director of the Court,* 84 Hawai'i 138, 147, 931 P.2d 580, 589 (1997) (internal citations omitted).

**a. *The Statute Does Not Equate a Record Review With an IME.***

This court's inquiry begins with the language of the statute. In construing the term "IME," the court gives the term its ordinary, natural meaning. *See Leocal v. Ashcroft,* 543 U.S. 1, 125 S.Ct. 377, 378, 160 L.Ed.2d 271 (2004). Taken both in isolation and in the context of the statute, the term "IME" does not refer to a record review in the absence of an actual examination of the subject.

In its ordinary, natural meaning, the term "independent medical examination" refers to a procedure that includes an in-person examination. Numerous court orders, for example, use "IME" to refer to the "Physical and Mental Examination" procedures set forth in Haw. R. Civ. P. 35 and Fed.R.Civ.P. 35. *See Sice v. Oldcastle Glass, Inc.,* No. Civ. A.03–BB–114, 2005 WL 82148 at *3 (D.Colo. Jan.10, 2005) (holding that a motion for "IME" met Fed. R.Civ.P. 35(a) requirements); *see also Liftee v. Boyer,* 117 P.3d 821 (Haw.App.2004) (describing a physical examination as a "Rule 35 IME"); *Glover v. Grace Pacific Corp.,* 86 Hawai'i 154, 948 P.2d 575 (Hawaii App.1997) (motion for an "IME" involving an in-person examination could be filed pursuant to Haw. R. Civ. P. 35(a)). Physical and mental examinations performed pursuant to Haw. R. Civ. P. 35 and Fed.R.Civ.P. 35 necessarily involve in-person examinations. Both the Hawaii and the federal rules state that courts "may order the party to submit to a physical or mental examination ... or to produce for examination the person" who is to be examined. Courts routinely use the term "IME" to describe procedures in which in-person examinations were conducted. Plaintiffs cite no instance in which any court or other entity has used the term "IME" to refer to a mere record review.

Rejecting this judicial use of the term "IME," Plaintiffs focus on the portion of section 431:10C–308.5(b) that states, "Charges for independent medical examinations, including record reviews, physical examinations, history taking, and reports, to be conducted by a licensed Hawaii provider unless the insured consents to an out-of-state provider, shall not exceed the charges permissible under the appropriate codes in the worker's compensation supplemental medical fee schedule." This sentence is not labeled as a "definition" provision and instead relates to billing issues. Indeed, the statute has the title "Limitation on Charges," although it does include several requirements not directly tied to fees.

Plaintiffs say that the word "including" in the statutory language indicates that reviews, physical examinations, history takings, and reports are types of IME. That is, Plaintiffs' position is that the word "including" introduces subsets of IMEs, in much the same way that one could refer to "dogs, including collies, cocker spaniels, and dachshunds." "Including," by Plaintiffs' reading, means "having as members," with each member being a full-fledged IME, just as a collie is, by itself, a dog.

Under Plaintiffs' reading, even a mere history taking is an IME. Thus, according to Plaintiffs, any "licensed Hawaii provider" performing a history has to be in the same field as the doctor whose work is being reviewed and has to be approved by "mutual agreement." Plaintiffs further say that an out-of-state provider may be used only with the insured's consent.

Nothing in the statute suggests that Hawaii's legislature intended to impose the exceptional burdens that flow from Plaintiffs' interpretation. Insurers would no longer be able to use in-house providers at all. An out-of-state insurer would have to retain licensed Hawaii providers absent in-sureds' consent. Plaintiffs' statutory interpretation would give insureds veto power even if a doctor were limiting herself to performing only a ministerial history taking, not rendering opinions.

Plaintiffs dismiss this possibility, explaining that the statute applies only to "medical" reviews, that is, reviews that result in the rendition of opinions by doctors. The statute, however, speaks of history taking and record review by licensed Hawaii providers. It is not limited to history taking and record review involving "medical" review or physician opinions. Plaintiffs are therefore adding language to the statute without any basis and going far beyond interpretation.

The more natural reading of the statute is to interpret "including" as meaning "having as parts." While the word "including" may certainly be used to introduce examples in various contexts, reading it as meaning "having as parts" requires fewer somersaults and interpolations in the context of the statute in issue. Indeed, *Black's Law Dictionary* lists "to contain as a part of something" as the definition of "include." *Black's Law Dictionary* 777 (8th ed.2004). If "including" means "having as parts," then the statute is referring to an IME made up of several parts such as history taking and record review, with history taking and record review not being IMEs on their own. In that event, "including" would be used much as it is used in the statement "I prepared a brief, including doing the research, consulting with the client, drafting, and assembling exhibits." None of the items after "including" is itself a finished brief. A more homey example involves a parent's instruction to a child not to play video games until the child has finished his homework, including math, science, and social studies. The child could not then play video games upon solving math problems, because math

was only a part of the required homework, not an example, complete in itself, of the homework referred to by the parent.

### b. *The Legislative History Indicates that Record Reviews are Not IMEs.*

Like the statutory language, the legislative history of Haw.Rev.Stat. § 431:10C–308.5(b) establishes that mere record reviews are not IMEs. The language concerning charges for record reviews, physical examinations, history taking, and reports that are included in IMEs was added in a 1998 amendment. The added language is shown by the following underlining:

> Charges for independent medical examinations, *including record reviews, physical examinations, history taking, and reports,* to be conducted by a licensed Hawaii provider unless the insured consents to an out-of-state provider, shall not exceed the charges permissible under the workers' compensation schedules for consultation for a complex medical problem.

1997 Haw. Sess. Laws 543.

The Conference Committee Report for the amendment notes that the changes to the statute closed a perceived loophole in the statute that allowed doctors to charge insurers separately for in-person examinations and record reviews:

> The bill incorporates measures designed to eliminate abuses and excessive charges associated with independent medical examinations (IMEs). The bill clarifies that the workers' compensation fee schedule charge allowable for IMEs may not be exceeded by submitting a separate charge for the report or other ancillary procedures incident to the conducting of an IME.

Conf. Com. Rep. No. 117 on H.B. 2823 (Haw.1998).

The purpose of the 1998 amendments was to require that charges for an IME include charges for all parts of the IME, not just for the physical examination portion. Thus, the statutory restrictions on IME charges extended to any record review, history taking, or report that was part of the IME. The legislative history does not indicate that the amendment was intended to subject record reviews that are not part of IMEs to IME regulations. To the contrary, the Committee Report distinguishes between IMEs and parts of IMEs such as "the report or other ancillary procedures incident to the conducting of an IME."

Plaintiffs contend that the purpose of the statute was to regulate the IME process and to provide for fairness in an insurer's decisions. Because a record reviewer's recommendation that an insurer deny benefits has the same result as a doctor's decision to deny benefits following an IME, Plaintiffs argue that the same regulations should govern both procedures. A policy of achieving such fairness by regulating mere record reviews is not, however, suggested by the legislative history. Just as Plaintiffs' interpretation of the statutory language forced them to interpolate words, their policy analysis forces them to assume legislative intent that is nowhere evident in the legislative history.

The legislature's differentiation between an IME and a mere record review is logical. An insured has an interest in having a voice in which doctor will perform an IME because an in–person examination is a necessary part of an IME. An insured may be uncomfortable being examined by a doctor the insured knows is regularly retained by insurers and so may be biased against the insured. It is also conceivable that an insured whose medical problem involves, for example, sexual dysfunction

may want to be examined by a doctor of the same sex. Such concerns are substantially diminished when no in-person examination occurs. Creating differing requirements for IMEs, which require in-person examinations, and nonintrusive procedures like record reviews balances the competing needs of insureds and insurers.

Plaintiffs express concern that allowing doctors to conduct record reviews free of the restrictions imposed by Haw.Rev.Stat. § 431:10C–308.5(b) will encourage insurers to eschew in-person examinations, leading to less well-informed coverage decisions. Again, Plaintiffs are seeking to reach a laudable goal without any evidence that the legislature shared that goal. The legislature did not require an insurer to have any particular level of information before making a coverage determination. As Plaintiffs conceded at the hearing, an insurer may deny benefits for medical treatment without a doctor's review of any kind. *See Weigel v. Liberty Mutual Fire Ins. Co.*, No. ATX–2002–134–P (D.C.C.A. Dec. 21, 2004). Such a decision may be based on a nurse's opinion, or on a review by an insurance administrator with no medical training. An IME certainly provides the insurer with more information on which to base an insurance decision, but the legislature nowhere required an IME or even a record review. If an insurer elects to deny coverage based on a procedure less complete than an IME, the insurer's record on any challenge to its denial may be more vulnerable than it would have been

with an IME. An appeal of an insurer's denial of benefits may then be successful, but that is a risk the legislature left the insurer free to take. Nothing in the legislative history indicates otherwise.

c. *Liberty Mutual's Letter to Dr. Lau Does Not Affect This Court's Analysis of Legislative Intent.*

Plaintiffs urge the court to consider Liberty Mutual's earlier statement, in its letter to Dr. Lau, that IME fee restrictions applied to his mere record review. Plaintiffs say that Liberty Mutual itself thereby exhibited a belief that a mere record review, without more, was an IME under the statute. The court is unpersuaded.

If the court were construing an ambiguous contract, the parties' understandings of the contract they negotiated, drafted, and signed would be telling. But the court is here construing a statute and implementing legislative intent.[2] The parties' understandings do not reveal what the legislature intended.

d. *The Need to Follow the Clear Statutory Language and the Legislative Intent Outweighs the Benefits of Conforming Trial Court Decisions.*

Finally, Plaintiffs describe with horror the possibility that this court's divergence from Judge Ayabe's decision will create two tracks for insurance coverage disputes. Plaintiffs predict that out-of-state insurers may rush to federal court, while

---

**2.** More persuasive to courts than the parties' understandings are interpretations by administrative agencies that apply the provisions in issue. Under Hawaii law, courts must "accord persuasive weight to administrative construction and follow the same, unless the construction is palpably erroneous." *Morgan v. Planning Dpt., County of Kauai*, 104 Hawai'i 173, 180, 86 P.3d 982, 989 (2004). Citing this authority, Liberty Mutual urges the court to rule in accordance with *Weigel v. Liberty*

*Mutual Fire Ins. Co.*, No. ATX–2002–134–P. *Weigel*, however, speaks to a subject not in issue here. In *Weigel*, the insurance company employed a doctor to "perform the duties typically undertaken by adjusters and bill reviewers." The Insurance Commissioner held that the doctor's actions did not constitute an IME. That decision, however, did not address whether a "record review," which is often (but not necessarily) performed by a doctor, was an IME.

Hawaii insurers will litigate in state court, with different results. While consistent trial court decisions would indeed be salutary, this court's primary goal is to implement the clear statutory language and the unequivocal legislative intent. That is what the Hawaii Supreme Court directs.

This court notes further that, even if this court ruled in accordance with Judge Ayabe, insurers and insureds would not be guaranteed consistent results. Other state trial judges might disagree with Judge Ayabe, and other federal district judges might disagree with the decision in the present case. Thus, even within the state or federal system, parties could have inconsistent results. That is inherent in every trial court system; no trial judge binds any other trial judge. The effect of agreement or disagreement between a single federal district judge and a single state trial judge should therefore not be exaggerated.

## V. CONCLUSION.

Liberty Mutual's motions for judgment on the pleadings as to certain claims and partial summary judgment are granted. Plaintiffs' counter-motion is denied.

This order leaves for future adjudication portions of Engle's breach of contract claim, and the bad faith claim insofar as it relates to those remaining portions of the contract claim.

IT IS SO ORDERED.