RENDERED: AUGUST 24, 2017
TO BE PUBLISHED

# Supreme Court of Kentucky

## 2015-SC-000366-DG

*FINAL*

*DATE 9/14/17 Kim Redmon, DC*

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY

APPELLANT

ON APPEAL FROM COURT OF APPEALS
CASE NO. 2013-CA-002152-MR
V.      JEFFERSON CIRCUIT COURT NO. 12-CI-006500

RONIESHA ADAMS F/K/A
RONIESHA SANDERS; AND
RONIESHA ADAMS, AS MOTHER AND
GUARDIAN OF B.A., A MINOR CHILD

APPELLEES

**OPINION OF THE COURT BY JUSTICE KELLER**

**REVERSING**

State Farm Mutual Automobile Insurance Company appeals from the opinion of the Court of Appeals, which reversed the circuit court's declaratory and summary judgment in favor of State Farm. The only issue before us is whether State Farm is permitted unilaterally to require that a person seeking coverage undergo questioning under oath. Having reviewed the record, we reverse the Court of Appeals and reinstate the circuit court's judgment.

# I. BACKGROUND.

The underlying facts are not in dispute. Milton Mitchell owned a late model KIA, which he insured through State Farm. The State Farm policy provided basic reparation benefits (BRB) and uninsured motor vehicle coverage.

On April 3, 2012, Roniesha Adams (Adams), her son, BA, and BA's father, Barry Adams, Sr. (Barry) were passengers in Mitchell's car. While they were stopped at a red light, another vehicle struck Mitchell's car from the rear. That vehicle, which no one in the Mitchell car could identify, fled the scene. Following the accident, Adams, who was pregnant, BA, and Barry were transported to the hospital by ambulance. Mitchell and his three passengers asserted claims against State Farm, seeking PIP and uninsured motorist benefits. State Farm made initial payments of PIP benefits but, after an investigator took recorded statements from Mitchell, Barry, and Adams, State Farm suspended any additional payments. According to State Farm, Adams, Barry, and Mitchell gave inconsistent statements about where they were going that day, where they had been, and what happened when they were hit. State Farm also perceived inconsistencies between the statements and the police report and noted that Adams and Barry had been involved in a number of motor vehicle accidents in the preceding year. Because of these perceived inconsistencies, State Farm identified four "substantive issues" that it needed to clarify before it could continue to extend coverage:

> Whether the bodily injury or property damage was caused by the accident.

2

Whether the injury was caused by a hit-and-run motor vehicle, so as to qualify as an uninsured motor vehicle under the Uninsured Motor Vehicle coverage.

Whether the accident arose out of the ownership, maintenance, or use of an uninsured motor vehicle as defined in the policy.

If [Mitchell, Adams, or Barry] . . . has made false statements with the intent to conceal or misrepresent any material fact or circumstance in connection with any claim under this policy.

In order to resolve these issues, State Farm advised Mitchell, Adams, and Barry that, pursuant to a provision in the policy, they were required to submit to questioning under oath.[1] Mitchell submitted to questioning under oath and State Farm extended coverage to him. However, Adams and Barry refused to submit to questioning under oath and State Farm refused to pay any additional

_____

[1] The questioning under oath provision of the policy states:

Under:

a.    Liability Coverage, each *insured;*

b.    No-fault Coverage, Medical Payments Coverage, Uninsured Motor Vehicle Coverage, Underinsured Motor Vehicle Coverage, or Death, Dismemberment and Loss of Sight Coverage, each *insured*, or any other *person* or organization making claim or seeking payment; and

c.    Physical Damage Coverages, each *insured* or owner of a *covered vehicle*, or any other *person* or organization making claim or seeking payment;

must, at *our* option, submit to an examination under oath, provide a statement under oath, or do both as reasonably often as *we* require. Such *person* or organization must answer questions under oath, asked by anyone *we* name, and sign copies of the answers. *We* may require each *person* or organization answering questions under oath to answer the questions with only that *person's* or organization's legal representative, *our* representatives, any *person* or *persons* designated by *us* to record the questions and answers, and no other *person* present.

(Emphasis in original).

benefits. Adams and Barry then filed suit against State Farm, and State Farm filed a counterclaim seeking a declaratory judgment that it did not have to provide coverage because Barry and Adams failed to cooperate with its investigation. Following discovery, which included the depositions of Adams and Barry, each party moved for summary judgment. State Farm also moved the court for a declaratory judgment that it had no obligation to extend coverage to Adams or Barry. The circuit court granted State Farm's motions finding that "[u]nder the terms of the policy, the plaintiffs failed to cooperate in the investigation of their claims, thus their claims for BRB and uninsured motorist benefits are barred."

Adams, in her individual capacity, and as mother and guardian of BA, appealed to the Court of Appeals. For reasons that are not clear in the record, Barry did not appeal. The Court of Appeals reversed, holding that State Farm had to obtain a court order before it could require Adams to submit to questioning under oath. State Farm sought discretionary review, which we granted.

## II. STANDARD OF REVIEW.

The issue before us is one of law, which we review *de novo*. *Cumberland Valley Contractors, Inc. v. Bell Cnty Coal Corp.*, 238 S.W.3d 644, 647 (Ky. 2007).

## III. ANALYSIS.

At the outset, we note that Adams sought coverage under the BRB and uninsured motor vehicle provisions of State Farm's policy. Those types of coverage are governed by separate statutory provisions; however, KRS 304.20-

4

020, the uninsured motor vehicle coverage statute, "must be construed in light of and in accord with" KRS 304.39-010, et seq., the Motor Vehicle Reparations Act (the MVRA). *Countryway Ins. Co. v. United Fin. Cas. Ins. Co.*, 496 S.W.3d 424, 434 (Ky. 2016). Therefore, although governed separately, we believe that the same analysis applies equally to each provision.

We begin by briefly reviewing KRS 304.20-020 and pertinent sections of the MVRA. KRS 304.20-020(1), which is not part of the MVRA, provides that motor vehicle insurers must offer uninsured vehicle coverage, "provided the named insured shall have the right to reject in writing such coverage." The MVRA is more comprehensive and is intended:

1) To require owners, registrants and operators of motor vehicles in the Commonwealth to procure insurance covering basic reparation benefits and legal liability arising out of ownership, operation or use of such motor vehicles;

(2) To provide prompt payment to victims of motor vehicle accidents without regard to whose negligence caused the accident in order to eliminate the inequities which fault-determination has created;

(3) To encourage prompt medical treatment and rehabilitation of the motor vehicle accident victim by providing for prompt payment of needed medical care and rehabilitation;

(4) To permit more liberal wage loss and medical benefits by allowing claims for intangible loss only when their determination is reasonable and appropriate;

(5) To reduce the need to resort to bargaining and litigation through a system which can pay victims of motor vehicle accidents without the delay, expense, aggravation, inconvenience, inequities and uncertainties of the liability system;

(6) To help guarantee the continued availability of motor vehicle insurance at reasonable prices by a more efficient, economical and equitable system of motor vehicle accident reparations;

5

(7) To create an insurance system which can more adequately be regulated; and

(8) To correct the inadequacies of the present reparation system, recognizing that it was devised and our present Constitution adopted prior to the development of the internal combustion motor vehicle.

KRS 304.39-010.

To accomplish those goals, the MVRA provides that "every person suffering loss from injury arising out of maintenance or use of a motor vehicle has a right to" BRB. KRS 304.39-030(1). BRB provide "reimbursement for net loss suffered through injury arising out of the operation, maintenance, or use of a motor vehicle . . . ." KRS 304.39-020(2). "Basic reparation obligors . . . shall pay [BRB], under the terms and conditions stated in this subtitle, for loss from injury arising out of maintenance or use of a motor vehicle." KRS 304.39-040(2). Subject to certain exceptions, BRB are payable monthly unless a reparation obligor rejects the claim and gives written notice with an explanation for rejection. KRS 304.39-210(1) and (5). Thus, the MVRA is designed to ensure that victims of motor vehicle accidents promptly receive BRB for losses arising from those accidents without unnecessarily involving the courts. Because a claimant is only entitled to receive BRB for motor vehicle accident-related losses, reparation obligors are entitled to conduct a reasonable investigation to determine if such a relationship exists.

In order to expedite that investigation, the MVRA provides for the disclosure of certain information by BRB claimants. Upon request,

6

[t]he claimant shall deliver to the reparation obligor a copy of every written report . . . relevant to the claim, and available to him, concerning any medical treatment or examination of a person upon whose injury the claim is based and the names and addresses of physicians and medical care facilities rendering diagnoses or treatment in regard to the injury or to a relevant past injury, and the claimant shall authorize the reparation obligor to inspect and copy relevant records of physicians and of hospitals, clinics, and other medical facilities.

KRS 304.39-280(1)(b).[2] If a dispute arises between the claimant and the reparation obligor regarding "information required to be disclosed, the claimant or reparation obligor may petition the Circuit Court . . . for an order for discovery including the right to take written or oral depositions." KRS 304.39-280(3). Furthermore, "[i]f the mental or physical condition of a [claimant] is material to a claim for past or future basic or added reparation benefits, the reparation obligor may petition the circuit court for an order directing the person to submit to . . . examination by a physician." KRS 304.39-270(1). Thus, the MVRA provides for the disclosure of medical information, and it provides a method to obtain that information if it is not forthcoming and a method to resolve disputes regarding a claimant's physical and mental condition. However, the MVRA does not specifically provide for the disclosure of information regarding the underlying motor vehicle accident. With this background in mind, we look to the specific claims asserted by Adams and State Farm.

---

[2] KRS 304.39-280 provides for the mandatory disclosure of other information; however, that information is not at issue herein.

7

As noted above, Adams sought coverage for both BRB and uninsured motor vehicle benefits. As to uninsured motor vehicle benefits, this Court, in 1977, held that a policy provision requiring insureds to submit a sworn statement was an enforceable condition precedent to coverage. *Temple v. State Farm Mut. Ins. Co.*, 548 S.W.2d 838 (Ky. 1977). In *Temple,* the insureds were involved in a motor vehicle accident with an uninsured motor vehicle and sought coverage for their injuries. *Id.* at 839. When State Farm asked the insureds to provide "sworn statements," on advice of counsel, they refused to comply. *Id.* In the lawsuit that followed, State Farm argued that it was not obligated to provide coverage because the insureds had violated a term of the policy. *Id.* This Court held that:

> The basis of the Temples' rights against State Farm is contractual. The terms and provisions of the policy require, as a condition precedent to any action or right of recovery against State Farm, that the Temples provide sworn statements to State Farm as often as may be reasonably required. Although the Temples notified State Farm of the accident and provided an accident report to State Farm's agent, such information was insufficient for State Farm to evaluate the claim for settlement purposes. State Farm was entitled not only to an explanation of the circumstances of the accident contained in a police report, but was entitled also to the sworn statements of its insureds as to the details of its occurrence and, further, the "nature and extent of injuries, treatment, and other details entering the determination of the amounts payable." Such information, exclusively within the control of the Temples, was essential for State Farm to fulfill its responsibilities under the terms of the policy; and, provisions of the policy reasonably designed to secure a truthful disclosure of such information are valid and reasonable conditions precedent to an insuror's liability.
>
> The ill-considered refusal of the Temples' attorney to allow their statements to be taken, imposed upon State Farm considerable expense and expenditure of time to obtain the information which it had the right to receive without any expense. The information

8

> received nearly a year later through depositions did not so remedy
> the Temples' breach nor the prejudice to State Farm as to enable
> the Temples to avoid State Farm's denial of coverage.

*Id.* at 840.

The case herein differs from *Temple* because Adams is not the policy holder, as the Temples were. Thus, Adams did not agree to the terms of the State Farm policy under which she seeks coverage. However, that difference does not negate the policy provision or the purpose for that provision – permitting State Farm to obtain information regarding the details of the accident. Furthermore, nothing in the MVRA prevents State Farm from requiring a person seeking benefits under the policy to submit to a statement under oath as to the circumstances surrounding the accident.

However, the "MVRA is a comprehensive act which not only relates to certain tort remedies, but also establishes the terms under which insurers pay no-fault benefits, and provides for the penalties to which insurers are subjected if they fail to properly pay no-fault benefits." *Foster v. Kentucky Farm Bureau Mut. Ins. Co.*, 189 S.W.3d 553, 557 (Ky. 2006). Therefore, because the MVRA specifically provides for the sharing of documentation regarding a claimant's medical condition and methods for resolving disputes regarding failure to provide that documentation as well as for resolving disputes regarding a claimant's mental or physical condition, a reparation obligor must avail itself of the provisions of the MVRA to resolve such issues. A reparation obligor cannot attempt to resolve those issues through "questioning under oath" or any other similar procedure that is outside the boundaries established by the MVRA.

As noted above, State Farm listed four issues as being problematic: (1) whether the bodily injury or property damage was caused by the accident; (2) whether the injury was caused by a hit-and-run vehicle; (3) whether the accident arose out of the ownership, maintenance, or use of an uninsured motor vehicle; and (4) whether Adams had made false statements in connection with her claim. The first of these issues involves medical information and State Farm should have pursued resolution of that issue through the provisions of the MVRA. The second and third issues are related to the accident itself and are proper subjects for questioning under oath. The fourth issue may involve both medical and accident-related questions. As with the first issue, State Farm should have pursued any medical-related questions through the provisions of the MVRA. Because some of the issues listed by State Farm involved the acquisition of accident-related information, the circuit court correctly found that Adams was required to submit to questioning under oath regarding those issues as a condition precedent to coverage. Therefore, the Court of Appeals erred in reversing the circuit court's judgment.

Finally, we recognize that the distinction between issues involving medical-related questions and issues involving accident-related questions may not always be obvious and that those issues may sometimes be inter-related. However, we have faith that our trial courts and the parties will be able to perform the necessary analysis to make those distinctions until such time as the General Assembly deems it appropriate to address this potential dilemma.

## IV. CONCLUSION.

For the foregoing reasons, the Court of Appeals is reversed, and the circuit court's judgment is reinstated.

All sitting. Minton, C.J.; Cunningham, Hughes, Keller and VanMeter, JJ., concur. Venters, J., dissents by separate opinion which Wright, J., joins.

VENTERS, J., DISSENTING: The majority opinion unnecessarily permits motor vehicle reparation obligors (car insurance companies) to withhold payments of basic reparation benefits (BRB) until passengers injured in vehicular collisions agree to submit to a formal interrogation under oath. I believe that is contrary to the letter and purpose of the Kentucky Motor Vehicle Reparations Act and so I dissent.

Of course, no one including myself suggests that State Farm should accede to dubious claims without question. But the majority seems to have overlooked the fact that several weeks after the alleged accident, long after suspicions about the claims arose, and for more than an hour, Roniesha and Barry Adams freely and comprehensively answered every question posed by State Farm's claims investigator; and, they did so knowing they were being recorded. The transcripts of those examinations cover twenty-nine pages in a relatively small font. Roniesha and Barry each attested on the recording to the truthfulness of all their answers, satisfying any good faith need of State Farm's for any claims adjustment information possessed by the Adamses which could not be otherwise obtained from medical records available to State Farm.

11

As passengers in a motor vehicle owned and insured by another person, Roniesha and Barry Adams had a statutory right to the basic reparation benefits created by the Kentucky General Assembly. KRS 304.39-030 provides "every person suffering loss from injury arising out of maintenance or use of a motor vehicle [who has not expressly rejected the protection of the statute] a right to basic reparation benefits." State Farm has no authority to subordinate those statutory rights to a policy provision to which the Adamses never assented. To the contrary, State Farm and the other insurance companies that opt to sell motor vehicle insurance in Kentucky obligate themselves to provide BRB without unreasonable interference. The Adamses did not waive or forfeit their statutory right to BRB by riding in a car insured by State Farm.

State Farm exercised its reasonable opportunity to question the Adamses about the incident, and the Adamses fully cooperated. If doubts or suspicions persisted about the validity of their claims, State Farm had every right to seek the approval of a court to withhold payments or to authorize further investigation, but it failed to do so. Instead, State Farm shifted the burden to the injured claimant to sue for benefits or do without, an outcome the Motor Vehicle Reparations Act was expressly designed to eliminate.

KRS 304.39-010 provides that the Motor Vehicle Reparations Act was adopted to effect the following purposes:

> . . .
> (2) To provide prompt payment to victims of motor vehicle accidents without regard to whose negligence caused the accident . . . ;

12

(3) To encourage prompt medical treatment and rehabilitation of the motor vehicle accident victim by providing for prompt payment of needed medical care and rehabilitation;

. . .

(5) To reduce the need to resort to bargaining and litigation through a system which can pay victims of motor vehicle accidents without the delay, expense, aggravation, inconvenience, inequities and uncertainties of the liability system.

As for the suspicions raised about their claims, it is worth noting that after Milton Mitchell, the policyholder and driver of the vehicle, submitted to State Farm's demand for a formal interrogation, as he was contractually bound to do, State Farm resolved its suspicions in favor of coverage, and it paid Mitchell's claims. Since State Farm acknowledged its coverage obligation by paying Mitchell, the only possible purpose for, and the certain effect of, State Farm's demand to further interrogate the Adamses was intimidation.

The majority opinion strays from the policy and purpose of the statutory rights provided by the Kentucky Motor Vehicle Reparations Act and allows automobile insurers to impose unauthorized barriers to payment of basic reparation benefits. I would affirm the decision of the Court of Appeals. Accordingly, I dissent.

Wright, J., joins.

COUNSEL FOR APPELLANT:

Raymond G. Smith
Richard W. Edwards
Jared Lee Downs
John Lott Hardesty
Boehl, Stopher & Graves, LLP


COUNSEL FOR APPELLEES:

Aaron Michael Murphy
Murphy & Associates PLC


COUNSEL FOR AMICUS CURIAE, COALITION AGAINST INSURANCE FRAUD;
AND, NATIONAL INSURANCE CRIME BUREAU:

Matthew Jon Smith
Neil Baine
Smith Rolfes & Skavdahl, Co., LPA