COUNSEL FOR APPELLANT: Edward H. Stopher, Louisville, Boehl, Stopher & Graves, LLP, Todd Patrick Greer, Louisville, Boehl, Stopher & Graves, LLP.
COUNSEL FOR APPELLEES: Kevin Crosby Burke, Louisville, Burke Neal PLLC, C. David Ewing, Louisville, Ewing & Willis, PLLC, Jamie Kristin Neal, Burke Neal PLLC, Damon Blake Willis, Louisville, Ewing & Willis, PLLC.
AMICUS CURIAE, KENTUCKY DEFENSE COUNSEL, INC.: Darrin W. Banks, Paintsville, Porter, Banks, Baldwin & Shaw, PLLC.
AMICUS CURIAE, KENTUCKY JUSTICE ASSOCIATION: Matthew Marston McGill, Lowder & McGill, PLLC.
AMICUS CURIAE, PROPERTY CASUALTY INSURERS ASSOCIATION OF AMERICA: William D. Kirkland, Frankfort, McBrayer, McGinnis, Leslie & Kirkland, PLLC.
AMICUS CURIAE, INSURANCE INSTITUTE OF KENTUCKY: William Clifton Travis, Travis & Herbert & Stempien, PLLC.
OPINION OF THE COURT BY JUSTICE WRIGHT
Appellees, Anita Houchens and Jordan Sanders, were injured in an automobile accident in Louisville, Kentucky, on July 28, 2011. Both sought chiropractic treatment for injuries sustained in the accident. The bills were submitted to Appellant, Government Employees Insurance Company (GEICO), for payment under their basic reparations benefits (BRB). Basic reparations benefits provide "reimbursement for net loss suffered through injury arising out of the operation, maintenance, or use of a motor vehicle, subject, where applicable, *924 to the limits, deductibles, exclusions, disqualifications, and other conditions provided in" the Motor Vehicle Reparations Act (MVRA). KRS 304.39-020(2). The maximum amount of basic reparation benefits payable for all economic loss resulting from injury to any one (1) person as the result of one (1) accident shall be ten thousand dollars ($10,000)...." Id. Basic reparation benefits are often referred to alternatively as personal injury protection ("PIP") benefits or "no-fault" benefits.
GEICO later denied coverage and refused to pay for certain medical treatments which Appellees had already received, some of which had been incurred more than 30 days prior to the notification of denial. Appellees filed suit alleging that GEICO improperly denied coverage under their BRB based upon a medical records review and requested the trial court to certify the case as a class action. The court granted the motion to certify the case as a class action. Appellees argue KRS 304.39-270 requires an independent medical examination before GEICO can deny them basic reparations benefits (BRB). The trial court ruled that KRS 304.39-270 was permissive and entered summary judgment against Appellees. The Court of Appeals reversed the summary judgment and remanded the case to the trial court for further proceedings. We now affirm the Court of Appeals on different grounds.
When hunting raccoons at night with dogs, the hunters listen to the baying and barking of the dogs as they track the raccoon through the hills and forests. When the raccoon (coon) climbs a tree to avoid the dogs, the dogs are supposed to remain at the base of the tree barking until the hunter arrives. Unfortunately, the dog sometimes mistakes the tree or the coon climbs from one tree to another. The hunter's frustration is then expressed as the dogs are "barking up the wrong tree." To quote Davy Crockett "I told him that he reminded me of the meanest thing on God's earth, an old coon dog barking up the wrong tree." Sketches and Eccentricities of Col. David Crockett of West Tennessee 58 (J. & J. Harper 1833).
In the current case, the attorneys argued the case based on KRS 304.39-270(1), a statute that says GEICO "may petition the circuit court for an order directing the person to submit to a mental or physical examination by a physician." Use of the word "may" makes it clear that GEICO's decision of whether to seek the examination is permissive. The statute fails to address when and how GEICO could deny basic reparations benefits. The trial court based its decision to grant summary judgment on the implications of that statute rather than examining the remaining parts of the MVRA. Unfortunately, by focusing solely upon KRS 304.39-270, the attorneys and trial court were barking up the wrong tree.
KRS 304.39-270 is a discovery statute which allows the reparations obligor (GEICO) to request a mental or physical examination by the physician of their choice. If the claimant refuses, the statute makes provisions for the reparations obligor to petition the court to order an examination. It addresses discovery rights of the parties, when these issues can be taken to court, and the impact of refusal. The issue before us is whether the reparations obligor can deny a claim for BRB based on an examination of the medical records.
The trial court ruled that the word "may" in KRS 304.39-270(1) is permissive. As noted, the statute states that "the reparations obligor may petition the circuit court for an order directing the person to submit to a mental or physical examination by a physician." This provides the option and the circumstances under which a reparations obligor may seek discovery regarding *925 any claim "for past or future basic or added reparation benefits...." The statute uses the permissive word "may" rather than the obligatory "shall." Therefore, it is clear that the reparations obligor is not required to seek an examination under this discovery statute. What is not clear is whether this allows GEICO to deny BRB in the manner it did in the present case.
Appellees argue KRS 304.39-270 requires an independent medical examination before GEICO can deny them BRB. Based on the determination that GEICO was permitted to request a medical examination-but did not have to do so-the trial court found that Appellees' "claim with regard to KRS 304.39-270 fails." The trial court then granted GEICO's motion for summary judgment. While the trial court's interpretation of this statute is accurate insofar as it found that the medical examination under the KRS 304.39-270 is permissive, its interpretation of this statute did not adequately address the issues presented in this case. Therefore, the matter was not ripe for summary judgment and the trial court erred in granting GEICO's motion.
This case turns on statutory interpretation, which is a matter of law that we review de novo. Bob Hook Chevrolet Isuzu, Inc. v. Com. Transp. Cabinet, 983 S.W.2d 488, 490 (Ky. 1998). In interpreting the statute, we must determine whether GEICO had to obtain an examination before denying BRB or if it could deny BRB with a paper review of the claimant's medical records. KRS 304.39-270 provides for discovery and fails to address the issue of denial of BRB. Therefore, it fails to address whether GEICO may deny BRB based on a paper review or whether GEICO is prohibited said denial. Thus, the issue was unresolved and it was improper of the trial court to grant summary judgment without further review of the statutes.
The Court of Appeals did a good job of analyzing the cases addressing related issues. In reversing the trial court's grant of summary judgment, the Court of Appeals stated "[w]e discern a distinct difference between the use of a medical records review by a reparations obligor for the purpose of establishing good cause for a court-ordered IME and the use of a medical records review by that obligor for the purpose of unilaterally denying or terminating an insured's benefits." We agree and hold the Court of Appeals was correct in reversing and and remanding the case. However, the Court of Appeals failed to address the flip-side of the question: whether the provisions of KRS 304.39-270 that state a reparations obligor "may petition the court" would constitute a prohibition of GEICO denying BRB without having procured an examination. As we have stated above, it would be improper to construe the word "may" as being compulsory in a statute which provides for discovery. Since the language of the statute is permissive and deals with discovery, it would be inappropriate to contort the language into restricting whether a reparations obligor may or may not deny BRB based on a paper review of the medical records.
Since KRS 304.39-270 fails to address the issue of whether GEICO can deny BRB based on a paper review of medical record, we must proceed to an analysis of the other statutes under Kentucky's Motor Vehicles Reparation Act (MVRA). KRS 304.39-210(5) provides that
[a] reparation obligor who rejects a claim for basic reparation benefits shall give to the claimant prompt written notice of the rejection, specifying the reason. If a claim is rejected for a reason other than that the person is not entitled to the basic reparation benefits claimed, *926 the written notice shall inform the claimant that he may file his claim with the assigned claims bureau and shall give the name and address of the bureau.
The statute specifically provides for rejection of claims, so, obviously, GEICO would have the ability to reject the claim under some circumstances. Its language is clear that the main basis for rejecting a claim would be that "the person is not entitled to the basic reparation benefits claimed."
The statute provides specific circumstances when the claimant is not entitled to the basic reparation benefits claimed. KRS 304.39-200 specifically provides that "[a] person intentionally causing or attempting to cause injury to himself or another person is disqualified from basic or added reparation benefits for injury arising from his acts...." In State Farm Mut. Auto. Ins. Co. v. Adams, 526 S.W.3d 63, 64 (Ky. 2017), this Court was recently tasked with determining whether an insurance company "is permitted unilaterally to require that a person seeking coverage undergo questioning under oath." Therein, the majority held that the injured party "was required to submit to questioning under oath regarding [accident-related] issues as a condition precedent to coverage."
Kentucky's MVRA excludes a number of people from BRB. For example, KRS 304.39-190 provides that "[a] person who converts a motor vehicle is disqualified from basic or added reparation benefits...." KRS 304.39-230 states that claims must be filed within the statutory time-period. Furthermore, a household member may be excluded from a liability insurance policy coverage by agreement of the insurer and the named insured so long as the excluded claimant is not a spouse or dependent of the named insured. KRS 304.39-045. Pursuant to KRS 304.39-040 (4), an operator or passenger on a motorcycle is not entitled to BRB unless BRB has been purchased as optional coverage. Under the provisions of KRS 304.39-030, the claimant would not be entitled to BRB if he has rejected the limitation of his tort rights as provided in KRS 304.39-060 (4). These are some examples which illustrate that the legislature knew how to exclude BRB coverage in drafting its statutes. It is important to note the absence of any provision in Kentucky's MVRA for a reparations obligor's ability to unilaterally deny a BRB claim based on a paper review of medical records or a mental or physical examination.
GEICO cites to two other jurisdictions (Florida and Hawaii) which do allow denials based on a medical records review. Through our canvasing of other jurisdictions, we add Massachusetts to that list. We were neither pointed to nor find any other states with BRB[1] which provide for denial of benefits based on a medical records review. We note that the statutory schemes in Florida, Hawaii, and Massachusetts significantly differ from Kentucky's. Namely, these three states have specific statutes authorizing the denial of BRB based on a medical records review. Moreover, their statutes provide significant safeguards for when a reparations obligor may deny payment.
For example, Florida's statute details:
An insurer may not withdraw payment of a treating physician without the consent of the injured person covered by the personal injury protection, unless the insurer first obtains a valid report by a Florida physician licensed under *927 the same chapter as the treating physician whose treatment authorization is sought to be withdrawn, stating that treatment was not reasonable, related, or necessary. A valid report is one that is prepared and signed by the physician examining the injured person or reviewing the treatment records of the injured person and is factually supported by the examination and treatment records if reviewed and that has not been modified by anyone other than the physician. The physician preparing the report must be in active practice, unless the physician is physically disabled. Active practice means that during the 3 years immediately preceding the date of the physical examination or review of the treatment records the physician must have devoted professional time to the active clinical practice of evaluation, diagnosis, or treatment of medical conditions or to the instruction of students in an accredited health professional school or accredited residency program or a clinical research program that is affiliated with an accredited health professional school or teaching hospital or accredited residency program.
Fla. Stat. Ann. § 627.736. Therefore, the records review used by GEICO would have failed to meet the requirements of the Florida statute it points this Court to. First, the doctors GEICO employed to conduct the review were not licensed in Kentucky. Second, they were not licensed in the same specialty as Appellees' provider. The doctors employed by GEICO were surgeons. It is unusual for surgeons to perform therapy, and GEICO failed to provide any credentials showing qualifications or work history as therapist by its doctors. It also failed to provide any credentials showing their training and experience as chiropractors. It is a real and significant question as to whether an orthopedic surgeon would be as well-qualified to review therapeutic chiropractic treatments as someone qualified and performing chiropractic therapy.
Hawaii's statutes also provide for records review as a means of conducting independent medical examinations. GEICO cites to a federal district court case, Engle v. Liberty Mut. Fire Ins.Co. , 402 F.Supp.2d 1157 (D. Haw. 2005). However, just as with the Florida statutes, those in Hawaii differ markedly from those in our Commonwealth. The Hawaii statutes provide for records review as a form of IME. Kentucky's simply do not-and we have neither found, nor has GEICO directed us to-any other states that do.
In Massachusetts, a BRB claim may only be denied based solely upon a review of the medical records in the event the doctor reviewing the records is of the same specialty as the treating provider. Boone v. Commerce Ins. Co., 451 Mass. 192, 196, 884 N.E.2d 483 (2008).
Because Kentucky does not provide for any such record review (as is the case for the majority of states who have BRB systems), the legislature has had no need to put safeguards in place such as those which exist in Florida, Hawaii, and Massachusetts.
KRS 304.39-020(2) states in pertinent part: " '[b]asic reparation benefits' mean benefits providing reimbursement for net loss suffered through injury arising out of the operation, maintenance, or use of a motor vehicle, subject, where applicable, to the limits, deductibles, exclusions, disqualifications, and other conditions provided in this subtitle. " (Emphasis added.) The definition specifically provides that the "limits, deductibles, exclusions, disqualifications, and other conditions" to the basic reparations benefits are provided in this subtitle. A careful examination of the subtitle fails to reveal any provision for a *928 unilateral rejection of a BRB claim by GEICO based on a paper review of medical records, or a mental or physical examination.
GEICO argues that "[u]nder Appellees' interpretation, a reparations obligor cannot deny payment of the medical bill predating the accident at issue and for treatment of a totally unrelated matter without an IME...." The definition of basic reparations benefits obviously prohibits coverage for a medical bill predating the accident or for treatment of a totally unrelated matter. The definition of basic reparations benefits set forth in KRS 304.39-020(2) states that the benefit provides "[r]eimbursement for net loss suffered through injury arising out of the operation, maintenance, or use of a motor vehicle...." The definition requires that any basic reparations benefits must be based on loss suffered as a result of the accident at issue. GEICO's concern that it would be unable to deny a bill that predated the accident at issue or is based on an unrelated injury is addressed by the definition of basic reparations benefits. Medical bills that predated the accident at issue or an unrelated injury would not meet the definition of loss subject to basic reparations benefits and could be denied. That the claims of Anita Houchens and Jordan Sanders are the result of the accidents at issue is established by the fact that GEICO agrees that the medical bills are a result of the accident and that it should pay part of them as reasonable.
The question to be resolved is whether GEICO can deny the claims of the class based on a paper review of the medical claims. KRS 304.39-020(5)(a) provides in pertinent part, " '[m]edical expense' means reasonable charges incurred for reasonably needed products, services, and accommodations, including those for medical care, physical rehabilitation, rehabilitative occupational training, licensed ambulance services, and other remedial treatment and care." The statute requires that the charges be reasonable and for reasonably needed products, services, etc. The next step is to inquire as to how the Kentucky MVRA requires that said reasonableness be determined. KRS 304.39-020(5)(a) addresses this issue by providing that "[t]here shall be a presumption that any medical bill submitted is reasonable."
If the medical bill submitted is presumed to be reasonable, what is required for GEICO to be able to overcome the presumption? The presumption is enough to establish a starting point that the medical treatment is reasonably needed and the bill is reasonable for what has been provided, as "a presumption imposes on the party against whom it is directed the burden of going forward with evidence to rebut or meet the presumption...." KRE 301. Since a legal presumption must be overcome in order to deny a medical bill or expenses, an action would have to be filed with the courts-and GEICO would be required to present evidence to rebut said presumption. Because the bills are presumed reasonable, this would prevent GEICO from unilaterally denying medical treatment or bills based upon a paper review of the medical record, or a mental or physical examination. To hold otherwise and to yield to GEICO's position would, as the Court of Appeals opined, "essentially make [GEICO] the judge, jury and executioner." As that court stated, "[w]e are of the opinion that such violates the intent and purpose of Kentucky's MVRA."
We also point out that the MVRA defines "[m]edical expense" as "reasonable charges incurred for reasonably needed products, services, and accommodations...." KRS 304.39-020(5)(a). The definition is clear that the phrase "medical expense" includes reasonably needed products, *929 services, and accommodations in addition to reasonable charges. Therefore, the presumption that any medical bill submitted is reasonable would include the need for the products, services, and accommodations.
KRS 304.39-010 provides the following description of its policy and purpose:
(1) To require owners, registrants and operators of motor vehicles in the Commonwealth to procure insurance covering basic reparation benefits and legal liability arising out of ownership, operation or use of such motor vehicles;
(2) To provide prompt payment to victims of motor vehicle accidents without regard to whose negligence caused the accident in order to eliminate the inequities which fault-determination has created ;
(3) To encourage prompt medical treatment and rehabilitation of the motor vehicle accident victim by providing for prompt payment of needed medical care and rehabilitation ;
(4) To permit more liberal wage loss and medical benefits by allowing claims for intangible loss only when their determination is reasonable and appropriate;
(5) To reduce the need to resort to bargaining and litigation through a system which can pay victims of motor vehicle accidents without the delay, expense, aggravation, inconvenience, inequities and uncertainties of the liability system;
(6) To help guarantee the continued availability of motor vehicle insurance at reasonable prices by a more efficient, economical and equitable system of motor vehicle accident reparations;
(7) To create an insurance system which can more adequately be regulated; and
(8) To correct the inadequacies of the present reparation system, recognizing that it was devised and our present Constitution adopted prior to the development of the internal combustion motor vehicle.
(Emphasis added.) GEICO's assertion that it should have the right to deny payment of a claimant's medical treatment based on a paper review of the medical record after the treatment had been rendered is inconsistent with subsections 2, 3, 5 and 7 of KRS 304.39-010 's statement of policy and purpose. All these subsections are concerned with making sure injured victims get prompt medical treatment and rehabilitation with prompt payment and simplified procedures.
Furthermore, KRS 304.39-060(2)(a) states that "[t]ort liability with respect to accidents occurring in this Commonwealth and arising from the ownership, maintenance, or use of a motor vehicle is 'abolished' for damages because of bodily injury, sickness or disease to the extent the basic reparation benefits provided in this subtitle are payable therefor...." KRS 304.39-060(4) provides that a person may reject limitation on his or her tort rights, but KRS 304.39-060(8) provides that the rejection would prohibit the claimant from collecting any basic reparation benefits. Therefore, any claim, right, or consequences for denial of a BRB claim is controlled by the MVRA and the parties have waived their common-law tort remedies.
Let us now examine how GEICO's procedure worked in the case of the class representatives herein. Appellees, Anita Houchens and Jordan Sanders, were injured in an automobile accident in Louisville, Kentucky, on July 28, 2011. Both sought chiropractic treatment for injuries *930 sustained in the accident. The bills were submitted to GEICO for payment under their basic reparations benefits. In mid-October 2011, GEICO retained Integrity, a third-party medical consulting company located in Minnesota, to conduct medical reviews of Houchens's and Sanders's medical records.
On October 21, 2011, Dr. Julie Samson, an orthopedic surgeon in Minneapolis, Minnesota, submitted a report which indicated that, based on her review of some of the Houchens's medical records, treatment was not reasonable or necessary after August 17, 2011. GEICO notified Houchens on November 15, 2011, that it terminated her no-fault benefits retroactively to October 14, 2011. GEICO paid $4442 and Houchens was left liable for the balance of $4710.
Houchens was placed in the impossible position of having to determine what treatments GEICO would be willing to pay for and refusing any additional treatment her medical provider said she needed. She would be required to have the medical knowledge and judgment to evaluate and stop the treatment recommended by her medical provider. William Osler, often referred to as the father of modem medicine, has been quoted as saying, "a physician who treats himself has a fool for a patient." It is difficult to be objective when you are the person in pain and receiving medical treatment.
Perhaps Houchens should have hired a second chiropractor to review the recommended treatment. The problem with this is that even GEICO acknowledges that some of the treatment was needed and appropriate. Therefore, the second chiropractor would need to review the proposed treatment on an ongoing basis. Houchens would be in the impossible position of incurring the expense for a chiropractor to constantly monitor her treatment and then evaluating whether to believe her treatment provider or the chiropractor hired to monitor every step in her treatment. She would then have to come to the correct conclusion thirty days before GEICO provided her with any notice of its determination that the medical treatment had exceeded what GEICO had determined was reasonable. GEICO's actions violated the policies of achieving "prompt payment" for "prompt medical treatment and rehabilitation" by "a system" designed to reduce the need for "bargaining and litigation" by the accident victim "without the delay, expense, aggravation, inconvenience, inequities and uncertainty of the liability system."
Jordan Sanders was hurt in the same accident and received chiropractic treatment. GEICO received a report on Sanders's treatment from Dr. Harvey Bishow, an orthopedic surgeon from Minneapolis, Minnesota, on October 19, 2011. The report was based on a paper review of Sanders's medical records. Dr. Bishow opined that Sanders's medical treatments had been unnecessary after September 28, 2011. On November 15, 2011, GEICO notified Sanders that his no-fault benefits were terminated retroactively to September 28, 2011. GEICO paid $3680 for the medical treatments and Sanders owed an additional $3680. Sanders would have faced the same issues in determining whether to receive medical treatment and how much he could incur before it would be necessary to terminate the treatments that were faced by Houchens. GEICO must pay based on the statutory presumption.
GEICO has remedies available in the event it receives an invoice for medical treatment that misrepresents the need for the treatment, reasonable cost of the treatment, or any material fact that GEICO relied upon in paying the invoice. Specifically, KRS 304.39-210(4) provides that if *931 the reparations obligor pays a benefit it was not required to pay due to misrepresentation of a material fact, it may bring an action to recover the improper benefits it has paid.
KRS 304.39-210(4) also provides that "[t]he action may be brought only against the person providing the item of medical expense, unless the insured has intentionally misrepresented the facts or knows of the misrepresentation." As described above, it would be very difficult for the injured victim of the accident to guard against his or her doctor or medical treatment provider billing unneeded services or charging unreasonable amounts. The statute requires GEICO to collect any improperly paid amounts from the medical treatment provider-thus protecting the innocent accident victim. GEICO can also sue the accident victim if he or she has made a material misrepresentation or knew of the material misrepresentation that resulted in an improper invoice being paid.
An examination of the Kentucky MVRA reveals the purpose of the act and how the individual statutes support that purpose. KRS 304.39-270 is a discovery device that does not address how to determine if a loss is payable. Appellees' reliance upon KRS 304.39-270, the trial court's summary judgment based upon that statute, and GEICO's response to the arguments are all "barking up the wrong tree." The purpose of the statute is to provide prompt medical treatment and rehabilitation. The medical treatments and invoices are presumed to be reasonable. It requires prompt payment and recovery of any improper payment must be accomplished by filing an action in court. The reparations obligor may file a lawsuit against the party who made the misrepresentation of a material fact causing the improper payment.
For the foregoing reasons, we affirm the Court of Appeals' reversal of the trial court's order granting summary judgment, albeit for the differing reasons detailed above.
Minton, C.J.; Cunningham, Keller, Venters, JJ., concur. Hughes, J., concurs in result only. VanMeter, J., not sitting.

We note that various states refer to the benefits discussed herein alternatively as BRB, personal injury protection, or no-fault insurance. The bottom line with any of these schemes, however named, is that individuals give up certain tort rights in exchange for certain benefits the system provides.